**UNITED STATES of America,**

v.

**Wallace ST. CLAIR, Defendant.**

United States District Court
S. D. New York.

April 13, 1965.

Robert M. Morgenthau, U. S. Atty. for Southern District of New York, New York City, John R. Bartels, Jr., Asst. U. S. Atty., of counsel, for United States of America.

Irving Younger, New York City, for defendant.

WEINFELD, District Judge.

The defendant moves, pursuant to Rule 41(e) of the Federal Rules of Criminal Procedure, to suppress as evidence upon his trial narcotics seized in his apartment during the course of a search following his arrest without a warrant.

It is not disputed that by reason of events relating to a sale and delivery of narcotics on the night of July 10–11, 1963, narcotics agents Bowen and Griffin had probable cause for the defendant's arrest without a warrant.[1] But the defendant was not arrested until September 18, 1963. Clearly there was ample time during the intervening ten weeks for the agents to obtain an arrest warrant, and the issue presented is whether the failure to do so invalidates the arrest and the consequent incidental search. A further issue is raised: whether the means used by the agents to gain entrance to the defendant's apartment violated his Fourth Amendment right against unlawful search and seizure, thereby voiding both the arrest and search.

On the night of July 10, 1963 agent Bowen, acting in an undercover capacity, through an informer negotiated with one "Wally Moore" for the purchase of one-half ounce of cocaine. Delivery was made by "Wally Moore" at about 1 A.M. in a hallway on West 158th Street, when he threw a brown paper bag containing the narcotics at Bowen's feet. Griffin, the surveillance agent, observed the transaction. Clearly there was abundant authority for the arrest of "Wally Moore," but no action was then taken.

The agents had not known "Wally Moore" prior to the night of July 10. Narcotics Bureau records contained no information about a "Wally Moore." The agents did not know that in fact "Wally Moore" was Wallace St. Clair, the defendant, until they next saw him at the time of his arrest on September 18, 1963 under the following circumstances: The agents sought for over two months to apprehend and further identify the drug seller. Finally, a day or two before his arrest, as a result of information that the "Wally Moore" they were seeking could be found at 2174 Bathgate Avenue, Bronx, New York, they conducted a surveillance of the premises on two separate occasions in the hope his appearance would lead to proper identification and an arrest, but he did not appear. Telephone company records verified that the suspect lived in a ground floor apartment on the left. They did not know his correct name.[2]

Entrance to the building proper, which has five apartments, is through a vestibule on the street level, leading to a common hallway. On either side of the hallway are apartments, the entrance doors of which front onto the hallway. The door from the vestibule to the common hallway is generally locked. On the night of September 18, at about 9:45, after observing lights in the ground floor

---

[1]. 26 U.S.C. § 7607 reads, in part: "ADDITIONAL AUTHORITY FOR BUREAU OF NARCOTICS AND BUREAU OF CUSTOMS.
"* * * agents of the Bureau of Narcotics * * * may * * *
"(2) make arrests without warrant for violations of any law of the United States relating to narcotic drugs * * * where the violation is committed in the presence of the person making the arrest or where such person has reasonable grounds to believe that the person to be arrested has committed or is committing such violation."

[2]. Upon the hearing the defendant testified he was not living there under his true name, Wallace St. Clair, but under the name of William Moore.

apartment which led them to believe it was probable their man was there, the agents decided to enter. They encountered one of the tenants of the building at the vestibule door. Exactly what then ensued is somewhat in doubt, but that confusion followed is not.

As the tenant was unlocking the door, the two Federal agents (accompanied by a city detective) approached, stating they wanted to see the tenant who lived in an apartment on the ground floor. She suggested they ring the landlord's bell, which they did. The landlord appeared almost immediately and refused the agents admittance, whereupon one of them identified himself as a Federal narcotics officer. The landlord contended all his tenants were law-abiding. A discussion ensued and there was a general commotion in the vestibule area. At this point, while the vestibule door was ajar, agent Griffin circled the group, reached the door of the apartment on the left and knocked; almost simultaneously the defendant, having heard the commotion outside, opened the door. He was in an undershirt, without eyeglasses. Griffin asked if his name was Wally and if he wore glasses, to which he responded affirmatively. Upon closer observation Griffin was satisfied that he was the "Wally Moore" who had engaged in the activities on July 10. He then told the defendant he was under arrest for violation of the Federal narcotics laws and entered the apartment, followed by the other agent. A search resulted in seizure of narcotics, the subject of this motion to suppress.

■■ First, the Court holds that the action of the arresting agent at the threshold of the defendant's apartment complied with the requirement of law.[3] The agent announced his authority and his purpose to arrest the defendant before entering the apartment, and the search which followed was a lawful incident of that arrest.

■ Second, the Court further holds that the means used to gain entrance to the common hallway on which defendant's apartment fronted did not violate his Fourth Amendment right. The hallway, used by tenants and the public alike, was not part of the defendant's apartment. The fact that the door leading to it from the street was locked for the security of the tenants did not make the hallway part of the defendant's dwelling so that his constitutional privilege under the Fourth Amendment extended thereto.[4] To hold otherwise would extend the protection under the Fourth Amendment beyond its purpose. Its essential aim is to protect the right of privacy in one's home and effects against arbitrary and unlawful invasion. Only unreasonable search and seizure is condemned; reasonable search is not. In urban centers—and most of the nation today is urbanized—the multi-family dwelling is the mode of life. Apartments in some structures number in the hundreds. It is not uncommon—indeed it is usual—that in some dwellings the entrance doors from the street to the common corridors leading to the apartments are locked for security reasons and entry is gained either by a key possessed by the apartment occupant, or by a buzzer system whereby one notifies the occupant who, if he desires to admit the caller, responds by releasing the locked door. In this circumstance, to hold that the common corridors, public hallways, landings and stairwells may be considered part of the tenant's home and that his right of privacy under the Fourth Amendment extends to such areas, would raise unreasonable barriers to law enforcement. To require, as a condition of a lawful and reasonable search of an apartment, the consent of a tenant or a

---

3. 18 U.S.C. § 3109; Miller v. United States, 357 U.S. 301, 308–309, 78 S.Ct. 1190, 2 L.Ed.2d 1332 (1958).

4. United States v. Lewis, 227 F.Supp. 433 (S.D.N.Y.1964). See Polk v. United States, 314 F.2d 837 (9th Cir.), cert. denied, 375 U.S. 844, 84 S.Ct. 96, 11 L. Ed.2d 72 (1963). Cf. Marullo v. United States, 328 F.2d 361, 363 (5th Cir.), cert. denied, 379 U.S. 850, 85 S.Ct. 93, 13 L.Ed.2d 53 (1964) (motel).

landlord to admission to the public areas which give access to the apartment would mean that enforcement officers, having probable cause to arrest, whether with or without a warrant, would in many instances necessarily alert a suspect, thereby affording him ample opportunity to flee or to destroy the fruits or instruments of the crime or contraband. No test of reasonableness under the Fourth Amendment decisions requires that any such doctrine be applied. "[T]he Fourth Amendment's commands, like all constitutional requirements, are practical and not abstract." [5] McDonald v. United States,[6] is not to the contrary. There, not only did the police lack probable cause when they unlawfully gained entrance to the premises in which he had an apartment, but the claim of probable cause for the arrest and the consequent search was based upon violation of the defendant's privacy, when the agents looked over the transom into his apartment.[7] Such is not the case here.

■ There remains for consideration the defendant's further contention that since the narcotics agents for ten weeks had probable cause for an arrest, their failure to obtain an arrest warrant vitiated both the arrest and the search. We do not reach the question posed upon the hearing—whether a narcotics officer who has probable cause for an arrest and ample time before arrest, is required to obtain a warrant, notwithstanding the authority granted by Section 7607 of Title 26, United States Code. The issue itself appears not to have been determined by the Supreme Court.[8] However, upon the facts here presented, it was reasonable for the agents to rely upon their statutory authority and to make the arrest without a warrant.[9] The fact is that although the illegal transaction on July 10 was had with one "Wally Moore," his true identity was not actually known until the moment of his arrest.[10] He had disappeared from his usual haunts, had not been seen in the interval, and efforts to locate him had failed. The information the agents had that their quarry might be someone living on a ground floor apartment in the Bathgate Avenue premises came not later than two days before the night of the arrest—and even then they were not sure that it was the man they were seeking. Their surveillance of the area did not bear fruit until the night of the arrest, and they lacked full confirmation until the defendant opened the door and responded to agent Griffin's questions. In these circumstances, the Court holds that it was reasonable for the agents to make their arrest without a warrant.

The motion to suppress is denied.

5. United States v. Ventresca, 380 U.S. 102, 108, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965).

6. 335 U.S. 451, 69 S.Ct. 191, 93 L.Ed. 153 (1948).

7. Only Justices Jackson and Frankfurter, concurring, attached significant weight to the circumstance that the agents had gained entry into the building by a felonious entry into the landlady's bedroom. 335 U.S. at 457–461, 69 S.Ct. 191. Three Justices took the position that tenants "had no right to object to the presence of officers in the hall of the rooming house." 335 U.S. at 462, 69 S.Ct. at 196.

8. Jones v. United States, 357 U.S. 493, 499–500, 78 S.Ct. 1253, 2 L.Ed.2d 1514 (1958). But see Ker v. State of California, 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963).

9. See United States v. Santiago, 327 F.2d 573 (2d Cir. 1964).

10. United States v. Williams, 219 F.Supp. 666, 669 (S.D.N.Y.1963), aff'd, 336 F.2d 183 (2d Cir.), cert. denied, 379 U.S. 857, 85 S.Ct. 112, 13 L.Ed.2d 60 (1964).