[Crim. No. 2670.   Fourth Dist., Div. One.   June 19, 1967.]

THE PEOPLE, Plaintiff and Respondent, v. EVARISTO FIGUEROA MENDOZA, Defendant and Appellant.

836

J. Perry Langford, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Lawrence E. Mindell, Deputy Attorney General, for Plaintiff and Respondent.

WHELAN, J.—Defendant was convicted in a nonjury trial of possession by an alien of a concealable firearm (Pen. Code, § 12021) and of possession of a switchblade knife (Pen. Code,

§ 653k). He appeals from the judgment imposing a fine of $25 for violation of Penal Code, section 12021, and a fine of $30 for the other violation.

## FACTS IN EVIDENCE

Defendant, on May 10, 1966, had resided and worked in Sebastopol, Sonoma County, California, for four years. He was a noncitizen immigrant from Mexico.

In Sebastopol, some six weeks prior to May 10, 1966, he had acquired a Browning .25 caliber automatic pistol which he placed and kept in the glove compartment of his car.

Some time after 4 p.m. of May 10, 1966, he drove his 1963 Chevrolet automobile from Mexico across the international border at San Ysidro, a part of the City of San Diego. On the United States side of the international boundary is a customs and immigration inspection station from which the California State Highway leads to a second inspection station at least 75 feet north of the first station.

Persons entering the United States from Mexico at that port of entry have a preliminary inspection at the first station; if the inspector deems it advisable to have a search made by the customs officials, he may direct the entrant to the second station.

Defendant, on the date in question, was directed to the second station, to which he proceeded over the state highway. There, a customs inspector (Winsell) opened the glove compartment of defendant's car and found the automatic pistol, a box of cartridges, and two clips for loading the weapon. He then asked defendant for identification and was given a "1151 alien registration card" and defendant's driver's license.

Thereupon the customs inspector called the San Diego police, some of whom were nearby. The customs inspector gave a San Diego police officer the information about the finding of the pistol and of defendant's status as an alien. The police officer then placed defendant under arrest; a search of defendant's person was made in which the switchblade knife was found in a trouser pocket.

The primary inspection area is located 40 or more feet from the international boundary, which would permit the complete entry of most vehicles beyond the international boundary before inspection. After an automobile has once crossed the boundary, customs inspectors exercise their own discretion as to whether it will be permitted to return to Mexico without clearing customs.

## DEFENDANT'S TESTIMONY

Defendant gave an account of his acquisition of the pistol in Sebastopol a month before and of keeping it in the glove compartment of his car. He said he had bought it (or lent money to the man from whom he obtained the weapon) and intended to sell it. He said he had bought the knife in Tijuana to use in his work as a farm laborer; he did not say how long he had had the knife; he did not know that possession of either weapon was illegal in California; and did not intend a criminal use of either. His testimony was given through an interpreter.

## DEFENDANT'S CONTENTIONS

Defendant contends as follows:

1. Penal Code, sections 12021 and 653k do not make unlawful the possession of guns or knives by travellers entering the United States through a regularly established port of entry until they have passed the customs line.

2. Penal Code, sections 12021 and 653k, require proof of *mens rea*.

## FIRST CONTENTION

■ In the factual situation presented, this contention would make the law with regard to the possession on California territory of contraband different in the case of one who has just entered California overland than it would be if he were arrested in the same relative position to the international border, but on his way out of the United States.[1]

In support of defendant's contention that when arrested he had not yet entered the United States, hence had not yet entered California, he cites three cases dealing with the question when the crime of smuggling, i.e., of bringing goods into the country in a manner to evade the payment of duty thereon, is committed. Those cases are: *Keck* v. *United States*, 172 U.S. 434 [43 L.Ed. 505, 19 S.Ct. 254]; *McGill* v. *United States*, 28 F.2d 572; *Wong Bing Nung* v. *United States*, 221 F.2d 917.

All deal with the question whether merchandise aboard a vessel has been smuggled when it has not yet reached the point—the customs line—where it is to be declared and duty

[1] We make no attempt to say when the ''customs line'' would have been passed under federal law. It seems that if one by oral declaration at the first inspection station said he had nothing to declare and in fact possessed dutiable merchandise, he would at that point have been guilty of a federal offense.

paid. Smuggling, according to *Keck* v. *United States, supra,* 172 U.S. 434, 458 [43 L.Ed. 505, 514, 19 S.Ct. 254, 262], concerns: ". . . the evasion of a duty already assessed, by passing the line of the customs authorities in defiance of law."

In *Wong Bing Nung* v. *United States, supra,* 221 F.2d 917, the plaintiff in error had not only not landed the merchandise, but having learned that it could not be landed free of duty had intended to return it to the country of origin. ". . . goods must actually be brought across the customs line in order to be smuggled." (*Wong Bing Nung* v. *United States, supra,* 221 F.2d 917, 919.)

We are not concerned at all with the question whether defendant's pistol and knife, if dutiable and being introduced for the first time into the United States, were or were not smuggled.

We know, however, that the customs officer who questioned defendant at the second station was not the first official that defendant had encountered.

Section 1225 of Title 8, U.S.C.A., places upon immigration officers the duty of examining all aliens arriving at ports of the United States. Each return to the United States of a resident alien is an entry. (*Ex parte Van Laeken,* 81 F.Supp. 79, 80.) We presume the performance of official duty.

Sections 1496 and 1497 of Title 19, U.S.C.A. provide, with regard to customs declarations: "The collector may cause an examination to be made of the baggage of any person arriving in the United States in order to ascertain what articles are contained therein and whether subject to duty, free of duty, or prohibited notwithstanding a declaration and entry therefor has been made." [§ 1496.]

"Any article not included in the declaration and entry as made, and, before examination of the baggage was begun, not mentioned in writing by such person, if written declaration and entry was required, or orally if written declaration and entry was not required, shall be subject to forfeiture and such person shall be liable to a penalty equal to the value of such article." [§ 1497.]

We may assume, therefore, that the officer at the first station was either an immigration officer or was a customs officer who obtained a declaration from defendant; that the officer at the second station was making a search under section 1496 or a similar section relating to vehicles as well as persons and luggage. (§ 1581(a), Title 19, U.S.C.A.)

Since not all persons entering are required to proceed to the second station, those not so required who are on the stretch of California highway between the two stations are clearly in the State of California. Defendant, merely because required to stop at the second station, is in no better case than those not required to stop there.

As to the presence of defendant in California, the facts here are stronger than those of *People* v. *Allen*, 172 Cal.App.2d 520 [342 P.2d 368], where that test was met by the defendant's having crossed bilaterally the width of a county highway in reaching the customs inspection station where he was searched and arrested.

The evidence here shows that after the decision in *People* v. *Allen* (1959) *supra*, 172 Cal.App.2d 520, the United States deeded to California the fee title to land upon which is located the highway to and from the international boundary.

THE QUESTION OF SELF-INCRIMINATION

Defendant takes a sideswipe at the possibility that in being required to show the credentials entitling him to re-enter the United States, defendant has been compelled to incriminate himself, since those credentials showed him to be an alien, and that status is an element of one of the crimes of which he has been convicted.

Defendant states his argument thus: ". . . either travellers are entitled to claim the privilege as to questions regarding nationality, or they are entitled to immunity from state prosecution based upon their disclosures."

He bases his contention upon *Malloy* v. *Hogan*, 378 U.S. 1 [12 L.Ed.2d 653, 84 S.Ct. 1489]; *Murphy* v. *Waterfront Com. of New York Harbor*, 378 U.S. 52 [12 L.Ed.2d 678, 84 S.Ct. 1594]; and *People* v. *Kelley*, 66 Cal.2d 232 [57 Cal.Rptr. 363, 424 P.2d 947].

It is not a violation of the privilege against self-incrimination that administrative officials and peace officers are authorized by certain statutes to require evidence of identity or a statement of identity.

The use of identification cards for aliens habitually crossing the international boundary is contemplated by the rules of the Immigration and Naturalization Service (*Ex parte Kojiro Sugimori*, 58 F.2d 782). Such cards as evidence of identity and status may be compared to licenses issued to operators of motor vehicles.

Under section 12951, Vehicle Code, a licensee when driving

shall display his license upon demand of a peace officer enforcing the provisions of the Vehicle Code.

Section 20003 of the same code requires that the driver of a vehicle involved in an accident involving injury to person shall give his name and address to an occupant of any vehicle collided with and to any traffic or police officer on the scene.

Enforcement of the provisions of the forerunner of section 20003, Vehicle Code, has been held not to have required one who is a defendant in a subsequent criminal prosecution to be a witness against himself. (*People* v. *Fodera*, 33 Cal.App. 8, 15 [164 P. 22] ; *People* v. *Diller*, 24 Cal.App. 799, 802 [142 P. 797] ; 8 Wigmore on Evidence [McNaughton Revision] 368, § 2259d, and cases cited therein.)

*Lipton* v. *United States* (9th Cir. 1965) 348 F.2d 591, held in a federal prosecution under the Dyer Act resulting from an arrest by California police which followed failure to produce a driver's license on demand, that the federal prosecution based upon information obtained in connection with the arrest was not the product of an unlawful arrest.

Evidence discoverd as the result of a customs search and which pointed to the commission of a state offense was held not to have been the result of an illegal search and seizure in a subsequent state prosecution. (*People* v. *Mitchell*, 209 Cal. App.2d 312, 318 [26 Cal.Rptr. 89].)

In *Abel* v. *United States*, 362 U.S. 217 [4 L.Ed.2d 668, 80 S.Ct. 683], evidence of alienage lawfully seized by officers of the Immigration and Naturalization Service in connection with a search incident to an arrest under section 1252(a), title 8, U.S.C.A., was later turned over to the F.B.I. and used in a prosecution for conspiracy to commit espionage. It was held that such transmission and use from one agency to another was proper. To the question ''Was the Government free to use the articles, even if properly seized, as evidence in a criminal case, the seizures having been made in the course of a separate administrative proceeding?'' 362 U.S. at p. 235 [4 L.Ed.2d p. 683, 80 S.Ct. p. 695], the court gave this answer: ''Surely no consideration of civil liberties commends discouragement of such cooperation between these two branches when undertaken in good faith. When undertaken in bad faith to avoid constitutional restraints upon criminal law enforcement the evidence must be suppressed. That is not, as we have seen, this case.'' 362 U.S. p. 240 [4 L.Ed.2d p. 687, 80 S.Ct. p. 698.]

█ It is clear that information obtained by Immigration and Naturalization Service officers from an alien subject to inspection at the time of entering the United States as to his alienage is not obtained in violation of his rights against self-incrimination, and is something in which he does not have a privilege. Indeed, in the case of an alien resident, the mere giving of his name would make it possible to determine his alien status from the records of the Immigration and Naturalization Service.

█ The search of the car was not an unlawful search. The communication from the customs to the local police of the finding of the illegal weapon was not an unlawful invasion of defendant's Fourth Amendment rights. █ The arrest based upon such information of the possession of a concealable firearm by an alien and the search of defendant's person incident thereto were not illegal.[2]

### THE QUESTION OF MENS REA

█ In arguing that he lacked the requisite intent to commit any crime, defendant alleges that he could not be guilty of a violation of section 12021 unless he knew (1) that he was an alien, (2) that he possessed a gun, and (3) that he was in California.

Inferentially, because of his reference to *People* v. *Grubb*, 63 Cal.2d 614 [47 Cal.Rptr. 772, 408 P.2d 100], he argues, also, that the motive for his possession of the gun and knife becomes an element of importance. *People* v. *Grubb, supra,* dealt with the possession of a broken-handled baseball bat that might have been used as a billy. Since a baseball bat, whether broken or unbroken, may be used for purposes other than as a weapon, and the possession of a baseball bat is not in itself the subject of a penal prohibition, the use to which Grubb had put the baseball bat was important.

Such is not the case here. Possession of a switchblade knife with a blade over a certain length is specifically proscribed. So, too, is the possession by an alien of a firearm capable of concealment on the person. The motive for the possession is irrelevant.

---

[2]It may be noted that officials of the Immigration Service have an interest related to their duties in the possible illegal possession of firearms by an alien, in view of section 1251(a)(14) of title 8, U.S.C.A., which declares to be deportable any alien who: ''. . . at any time after entry, shall have been convicted of possessing or carrying in violation of any law any weapon which shoots or is designed to shoot automatically or semiautomatically more than one shot without manual reloading, by a single function of the trigger . . .''

In any event, motive is not the same as intent. (See discussion in "The Mental Element in Crime" by Williams [1965], p. 14; *People* v. *Cannon*, 77 Cal.App.2d 678, 691 [176 P.2d 409].)

■ The rule applicable to statutes such as those here involved is declared in *People* v. *Gory*, 28 Cal.2d 450, 454 [170 P.2d 433], involving possession of marijuana: " 'Neither intent nor knowledge is an element of the offense.' "

The only knowledge required is knowledge of the character of the object possessed; knowledge that the possession is illegal is unnecessary.

■ Knowledge that one is in the State of California might conceivably be relevant in the case of a person who unwittingly had overstepped the boundary of a neighboring state, who might have been carried into the state against his will, or as the result of mistake in taking some vehicle of public transportation.

In the present case, defendant knew he was no longer in Mexico. Inferentially, he was on his way back to Sebastopol, from which he had carried the pistol and perhaps the knife. He was in and it was his intention and desire to be in California, with his pistol and his knife.

Judgment affirmed.

Brown, P. J., and Lazar, J. pro tem.,* concurred.

A petition for a rehearing was denied June 28, 1967, and appellant's petition for a hearing by the Supreme Court was denied September 13, 1967.

*Assigned by the Chairman of the Judicial Council.