[Crim. No. 28221. Second Dist., Div. Three. Oct. 29, 1976.]

THE PEOPLE, Plaintiff and Respondent, v.
KENNETH LEROY HOWARD, Defendant and Appellant.

**COUNSEL**

Burton Marks and Jonathan K. Golden for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, Howard J. Schwab and Alexander W. Kirkpatrick, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**COBEY, Acting P. J.**—Kenneth Leroy Howard appeals from a judgment of conviction of possession of a concealable firearm by a convicted felon. (Pen. Code, § 12021.) The appeal lies. (Pen. Code, § 1237, subd. 1.)

Appellant Howard contends that: (1) the police violated his constitutional rights when they illegally entered his apartment building through a locked security entrance; (2) they searched his apartment without his consent; and (3) they seized the guns they found in his apartment unconstitutionally. Each of these contentions is without merit.

Appellant's remaining arguments concern Penal Code section 12021. He urges that the section requires knowledge on the part of the convicted felon of his status and of the prohibition against possession of a firearm and that no proof of such knowledge was introduced at his trial.

Alternatively, appellant argues that Penal Code section 12021 is unconstitutional if it is interpreted not to require such knowledge on the part of a defendant-felon. Both of these arguments also lack merit. We will therefore affirm the judgment of conviction.

### STATEMENT OF FACTS[1]

On the afternoon of March 17, 1975, Los Angeles police officers went to an apartment building on Kingsley Avenue to investigate tips received from two informers that a black male by the name of Howard was selling heroin and using a certain apartment as a "shooting gallery."

Admission to the hallways of this building could be gained only through a locked door opened by key or buzzer activated by someone in an apartment. The officers did not use a key or seek a buzzer signal from any occupant. Instead, they simply entered the building at the same time someone else opened the door thereof. One of the officers, however, testified that the managers of many security buildings in the area, including appellant's building, had given the police keys to the outside doors.

The officers went immediately to appellant's apartment, identified themselves and their purpose, and asked to come inside. Appellant replied, "Come on in." Once inside, the officers asked for and received appellant's permission to search the apartment.

The search revealed marijuana, a rifle, and a Colt revolver. All of these items were seized. One of the officers testified that although he had no particular suspicion that the guns were stolen, it had been his experience in narcotics investigations that guns discovered in the course of such investigations frequently turn out to have been stolen.

Testifying in his own defense, appellant stated that he had not given permission to the police to search the apartment. He also stated that while police were interrogating him, his girl friend entered the apartment and told police that she owned the marijuana. Appellant admitted that he was the registered owner of both firearms, but claimed to have no knowledge that they were at the Kingsley apartment. He had purchased them before he was arrested and convicted of a felony and said he had no knowledge that he was thereafter prohibited from owning them.

---

[1]We construe all facts in the light most favorable to the People as the prevailing party below. (*People* v. *Vann*, 12 Cal.3d 220, 225 [115 Cal.Rptr. 352, 524 P.2d 824].)

## DISCUSSION

I. *Appellant's Constitutional Rights Were Not Violated by Police Entry Through the Outside Apartment Security Entrance.*

In *People v. Seals,* 263 Cal.App.2d 575, 577 [69 Cal.Rptr. 861], this statewide court held that officers can constitutionally enter apartment hallways and other common areas without a warrant or express permission from particular tenants. In the present case, however, officers gained entry to the hallway through a locked door. Appellant argues that in doing so the police committed a trespass in violation of his constitutional rights of privacy and freedom from unreasonable search and seizure.

■ For several reasons, however, we are convinced that under the facts of this case no constitutional violations occurred. First, one of the officers testified that the building's manager had given him a key to the outside door. Even though the key was not used on this particular occasion, its possession by the officers was unrebutted evidence that the police had the manager's permission to enter in the course of their duties. Appellant cannot presume to control the right of other tenants, or particularly the manager as the owner's agent, to authorize entry to the building's common areas by nontenants. (See *People v. Cruz,* 61 Cal.2d 861, 866-867 [40 Cal.Rptr. 841, 395 P.2d 889]; *People v. Egan,* 250 Cal.App.2d 433, 436 [58 Cal.Rptr. 627]; cf. *People v. Baker,* 12 Cal.App.3d 826, 836 [96 Cal.Rptr. 760].)

■ Second, we do not believe that the locked outside door established the same sanctity for the hallways and common areas as is established for individual apartments by the doors to those apartments. An outside security door is designed to prevent persons roaming through the apartment buildings for solicitation or perhaps criminal purposes. But no constitutional infringement of privacy occurs when an officer enters a building through the outside security door and goes immediately to an apartment where he has business with a particular tenant. (*United States v. St. Clair* (S.D.N.Y. 1965) 240 F.Supp. 338, 340.)[2] Even the tenant to be visited can easily avoid the visitor by not answering his door.

[2]The *St. Clair* case involved precisely the type of apartment security entrance involved in the instant case. Although apparently no California case has dealt with the identical question, our Supreme Court has cited the *St. Clair* decision for the general proposition that police officers may constitutionally enter common hallways of apartment buildings without a warrant or express permission. (See *People v. Terry,* 70 Cal.2d 410, 427 [77 Cal.Rptr. 460, 454 P.2d 36].) For a thorough discussion of other federal and state court decisions in conformity with *St. Clair,* see *People v. Seals, supra,* 263 Cal.App.2d at pp. 578-579.)

■ Finally, we note that even if the initial entry by the officers were trespassory, it would not invalidate the subsequent search of appellant's apartment because, as we will discuss below, consent therefor was freely given by appellant. His opportunity to make an intelligent decision as to whether he would consent to the search was in no way impaired by the fact that the officers first made contact with him by knocking on his apartment door rather than by buzzing him at the outside entrance. (Cf. *People v. Haven,* 59 Cal.2d 713, 718 [31 Cal.Rptr. 47, 381 P.2d 927] (sudden confrontation by officers who had illegally entered defendant's house vitiated consent to search); *People v. Lawler,* 9 Cal.3d 156, 164 [107 Cal.Rptr. 13, 507 P.2d 621] (consent obtained following illegal search held invalid).) A simple trespass alone will not invalidate a subsequent search which is otherwise proper. (*People v. Terry, supra,* 70 Cal.2d at p. 427; *People v. Medina,* 26 Cal.App.3d 809, 817 [103 Cal.Rptr. 337]; *People v. Seals, supra,* 263 Cal.App.2d at p. 579.)

II. *Substantial Evidence Supports the Conclusion that Appellant Consented to the Search of His Apartment.*

■ Testimony of the police officer regarding appellant's consent to search was unequivocal. Even defendant's own testimony can be interpreted an indicative of consent.[3] As an appellate court, we are bound by this determination since it is supported by substantial evidence. (*People v. West,* 3 Cal.3d 595, 602 [91 Cal.Rptr. 385, 477 P.2d 409]; *People v. Smith,* 63 Cal.2d 779, 798 [48 Cal.Rptr. 382; 409 P.2d 222], cert. den. 388 U.S. 913 [18 L.Ed.2d 1353, 87 S.Ct. 2119]; *People v. Brown,* 19 Cal.App.3d 1013, 1018.)

III. *Seizure of the Guns Was Constitutional.*

■ An officer may constitutionally search for instruments or fruits of a crime, contraband or evidence of criminal activity. (*Warden v. Hayden* (1967) 387 U.S. 294, 310 [18 L.Ed.2d 782, 793-794, 87 S.Ct. 1642].) Appellant urges this court to require that an officer engaged in a search have probable cause (i.e., specific articulable facts) to believe that items

---

[3]"Q. [by Prosecutor]: Did I understand you correctly that you may have said 'You might as well search' at some point?

"A. [by Appellant]: At the time they was coming in, and the investigation, I have no way of stopping them from searching.

"Q. So you said, 'You might as well search?'

"A. I did make that statement.

"Q. That was after the officers asked you if they could search?

"A. No. They was—Yeah, I guess so."

he uncovers are such evidence or instrumentalities before they can be seized.

We choose not to impose that requirement. Appellant's argument puts the cart before the horse. It would demand that an investigating officer know in advance and with substantial certainty which items will be of evidentiary use at trial. This creates a severe and illogical burden. The primary invasion of privacy occurs in the search itself. Seizure of items, subject to an accounting and eventual return to their owner, is not a new and independent infringement of constitutional rights which would justify the separate high standard of probable cause suggested by appellant. (See *Warden* v. *Hayden, supra,* 387 U.S. at pp. 309-310 [18 L.Ed.2d at p. 793].)

We therefore hold that before an item discovered in the course of a lawful search can be seized, an officer needs only a reasonable belief that the item may be evidence of the commission of a crime. (See *People* v. *Teale,* 70 Cal.2d 497, 511 [75 Cal.Rptr. 172, 450 P.2d 564].) In the instant case, the officer's investigative experience in narcotics cases made reasonable his seizure of the firearms.

IV. *Penal Code Section 12021 Does Not Require Knowledge on the Part of the Convicted Felon and, as so Interpreted, Is Not Unconstitutional.*

Appellant's final contention is twofold. First, he argues that no evidence was introduced at trial that he was aware of the prohibition Penal Code section 12021[4] placed upon him as a felon. Alternatively he asserts that if he could be convicted under this section without proof of knowledge of the prohibition or his status as a convicted felon, then he was denied due process of law.

In *People* v. *Mendoza,* 251 Cal.App.2d 835 [60 Cal.Rptr. 5], this statewide court held that under this section neither intent nor knowledge is an element of the offense. "The only knowledge required is knowledge of the character of the object possessed; knowledge that the possession is illegal is unnecessary." *(Id.* at p. 843.) ■ Therefore, the fact that appellant claims that he had no knowledge of the prohibition is irrelevant.

---

[4]Penal Code section 12021 states in pertinent part: "(a) Any person who has been convicted of a felony under the laws of the United States, of the State of California, or any other state, government, or country, . . . who owns or has in his possession or under his custody or control any pistol, revolver, or other firearm capable of being concealed upon the person is guilty of a public offense . . . ."

■ This interpretation of the statute is constitutional. In *Lambert* v. *California* (1957) 355 U.S. 225 [2 L.Ed.2d 228, 78 S.Ct. 240], the United States Supreme Court held that an ordinance which made it unlawful for any convicted person to remain in Los Angeles for more than five days was unconstitutional. The court emphasized that the *Lambert* ordinance penalized the mere act of existing. No activity was required to violate the statute. (*Id.* at p. 229 [2 L.Ed.2d at pp. 231-232].)

The California Supreme Court, in determining the constitutionality of a gun registration law, noted that mere existence was not penalized. Rather, as in the present case, the penalty was imposed upon possession. (*Galvan* v. *Superior Court,* 70 Cal.2d 851, 868 [76 Cal.Rptr. 642, 452 P.2d 930].) "Except under the unique circumstances of *Lambert,* knowledge of the law is not a requirement of due process." (*Id.*) A defendant must have knowledge of the character of the object possessed; he or she need not have knowledge that the possession is illegal. (*People* v. *Mendoza, supra,* 251 Cal.App.2d at p. 843.) Therefore, the statute as interpreted is not unconstitutional.

■ Additionally, appellant asserts that he had no knowledge of his status as a convicted felon and relies on *People* v. *Bray,* 52 Cal.App.3d 494 [124 Cal.Rptr. 913]. That case, however, is distinguishable from the present case. In *Bray,* the court held that because the defendant was ignorant of the facts necessary to come within the statutory prohibition of section 12021, instructions on mistake or ignorance of fact should have been given. The court indicated that no one was sure of the defendant's status and clearly limited the holding to the unique facts of the case. (*Id.* at p. 499.) In the present case, the record shows that similar ignorance of or confusion in regard to the facts which would warrant such a defense did not exist. No true issue of knowledge was presented since appellant admitted that he had been convicted of a felony.

DISPOSITION

The judgment is affirmed.

Allport, J., and Potter, J., concurred.

A petition for a rehearing was denied November 24, 1976, and appellant's petition for a hearing by the Supreme Court was denied December 22, 1976.