[Crim. No. 41054. Second Dist., Div. Three. Feb. 28, 1983.]

THE PEOPLE, Plaintiff and Respondent, v.
RONALD LEE MOTT, Defendant and Appellant.

**[Opinion certified for partial publication.]**

COUNSEL

Vana P. Margolese, under appointment by the Court of Appeal, for Defendant and Appellant.

George Deukmejian and John K. Van de Kamp, Attorneys General, Daniel J. Kremer, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, Shunji Asari and John R. Gorey, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**POTTER, Acting P. J.**—Defendant Ronald Mott appeals from a judgment entered after a jury found him guilty of failing to file and/or provide a disclosure statement in connection with a seller assisted marketing plan (Civ. Code, §§ 1812.217; 1812.203/1812.205; counts I-III) and attempted grand theft (Pen. Code, §§ 664/487, subd. 1; counts IV and V).

In December 1979, Donald Anderson called defendant in response to an advertisement in the business section of a local newspaper which read: "EX-CITING NEW SPORTS LEAGUE. Now looking for managing partner to run the [San Fernando] Valley team. Join the big time sports world in unique amateur sports league. Only work 6 mo. a year, like the pros! Xlnt profit potential from

player tuition fees. Only cash requirement is $4,000 for partnership contribution + $6000 for working capital. For interview call The National Sports League. . . ."

When defendant and Anderson met to discuss the advertised business opportunity, defendant described the National Sports League (hereinafter the League) as a national league for children between ages 11-15. Defendant was the commissioner of the League and its sole owner. The western division was to consist of six "individually owned" teams in various cities which were to compete against each other in various sports.

Defendant offered to sell the Los Angeles team to Anderson for $10,000. Of this amount, $4,000 was to be paid directly to the League, with the remainder to be placed in a team security deposit account.

Defendant gave Anderson a document entitled "Team Partnership Agreement." The agreement established the buyer and the League as partners in the operation of the team and provided for the division of team profits and ownership. The buyer would have a 67 percent ownership interest in his team and the League would have a 33 percent ownership interest. While the authority to run the team was vested in the "owner," he was not made a partner in the League and had no authority in it.

Under the arrangement, the League would dictate operating policies and procedures for each League team and provide a variety of league services, including the arrangement of conference league play, team transportation and lodging. The League was also to provide the owner with an extensive training program, assistance in recruiting of team members and staff and "extensive national advertising." The League was to obtain sports equipment at a discount and establish a comprehensive insurance plan. The League also agreed to incorporate.

In addition to the $4,000 "partnership contribution," which was to be paid directly to the League, each team owner was to forward $265 from each player's enrollment fee for the operation of the League and provision of League services.

At this initial meeting, defendant told Anderson that the entire league would soon be operational as one team had already been sold. Defendant falsely represented that he had already made arrangements to obtain sporting equipment, transportation and lodging for League team members at a reduced rate and that Anderson would have to "move fast" in order to purchase the Los Angeles team. He claimed that Anderson would make more than a $17,000 profit on his initial investment in a year's time.

Defendant showed Anderson a document entitled "Income and Expense Projection," but no disclosure statement was given to him.

After the meeting, Anderson became suspicious and contacted the police. Police Officers Larralde and Daniels, posing as prospective team purchasers, accompanied Anderson to a second meeting where defendant essentially repeated his earlier description of the operations of the League. Although defendant provided an operating manual and contract, the officers were not given a disclosure statement. At a third meeting, scheduled shortly thereafter, defendant was arrested pursuant to a warrant.

Prior to trial, defendant informed the court that he wished to dismiss his appointed public defender and represent himself at trial. The court granted his request.

Defendant represented himself throughout the jury trial without benefit of advisory counsel. He testified extensively on his own behalf urging, inter alia, that the League offered the sale of team partnership interests and was not a seller assisted marketing plan. The League was never incorporated.

Defendant was convicted of one count of violation of Civil Code section 1812.217 for placing an advertisement and making a representation to a purchaser about a seller assisted marketing plan without having first filed a disclosure statement with the Secretary of State, as required by Civil Code section 1812.203; two counts of failing to provide potential purchasers of the seller assisted marketing plan with such disclosure statement; and two counts of attempted grand theft. This timely appeal followed.

### Contentions

Defendant contends that: (1) the record does not support a finding that he voluntarily and intelligently waived his right to counsel; (2) the League offered the sale of team partnership interests and was not a seller assisted marketing plan under Civil Code section 1812.201; (3) the failure to file a disclosure statement (Civ. Code, § 1812.203) is necessarily included in the offense of failure to provide a disclosure statement to a potential purchaser (Civ. Code, §§ 1812.205, 1812.206); (4) the evidence did not establish that he "wilfully" violated Civil Code section 1812.217, and (5) his conviction and sentencing constitutes cruel and unusual punishment.

Respondent controverts all of defendant's contentions.

*Discussion*

*Summary*

In an unpublished portion of this opinion, we have determined that since the record does not establish that defendant was aware of the dangers and disadvantages of self-representation, we cannot find that defendant made a knowing and intelligent waiver of his right to counsel. Accordingly, the judgment is reversed. For purposes of retrial, however, we determine that the evidence presented at trial was sufficient to support a finding that defendant's proposed business operation was a "seller assisted marketing plan" within the meaning of Civil Code section 1812.201 and that he wilfully violated the provisions of sections 1812.203 and 1812.205, which are made punishable by section 1812.217. In view of the required reversal, defendant's other contention does not require discussion.

*The Business Operation of the League Constituted a Seller Assisted Marketing Plan Within the Meaning of Civil Code Section 1812.201*

■ Defendant contends that his marketing plan only involved offers to enter into team partnerships and therefore did not constitute a seller assisted marketing plan within the meaning of Civil Code section 1812.201.[1]

---

[1]Civil Code section 1812.201 provides in relevant part: "For the purposes of this title, the following definitions shall be used:

"(a) 'Seller assisted marketing plan' means any sale or lease or offer to sell or lease any product, equipment, supplies or services which requires a total initial payment exceeding five hundred dollars ($500), but requires an initial cash payment of less than fifty thousand dollars ($50,000), which will aid a purchaser or will be used by or on behalf of the purchaser in connection with or incident to beginning, maintaining, or operating a business when the seller assisted marketing plan seller has advertised or in other manner solicited the purchase or lease of the seller assisted marketing plan and done any of the following acts:

"(1) Represented that such purchaser will earn, is likely to earn, or can earn an amount in excess of the initial payment paid by the purchaser for participation in the seller assisted marketing plan;

"(2) Represented that there is a market for the product, equipment, supplies or services or anything, be it tangible or intangible, made, produced, fabricated, grown, bred, modified, or developed by the purchaser using, in whole or in part, the product, supplies, equipment or services which were sold or leased or offered for sale or lease to the purchaser by the seller assisted marketing plan seller; or

"(3) Represented that the seller will buy back or is likely to buy back any product made, produced, fabricated, grown or bred by the purchaser using, in whole or in part, the product, supplies, equipment or services which were initially sold or leased or offered for sale or lease to the purchaser by the seller assisted marketing plan seller.

"(b) A 'seller assisted marketing plan' shall not include:

"(1) A security defined in the Corporate Securities Law of 1968 (Division 1 (commencing with Section 25000) of Title 4 of the Corporations Code) which has been qualified for sale by the California Department of Corporations, or is exempt under Chapter 1 (commencing with Section 25100) of Part 2 of Division 1 of Title 4 of the Corporations Code from the necessity to qualify.

We disagree. The evidence establishes that the business operation of the League precisely fits the statutory definition of a seller assisted marketing plan and is not specifically listed as an exception thereto.

The advertised plan called for the sale by the League of interests in individual team partnerships in which the League was to be a minority partner. The purchasers were partners in the individual teams but did not become partners in the League. The League was to provide various services[2] to assist the purchaser in the operation of the team but not as its contribution to the team partnerships which were obliged to pay therefor. (Civ. Code, § 1812.201, subd. (a).) The initial payment of $4,000 to the League exceeded the $500 minimum required by the statute. The evidence further established that the defendant told potential purchasers that there was a market for the NSL and that they could earn "an amount in excess of the initial payment made." (Civ. Code, § 1812.201, subds. (a)(1) and (2).)

Where, as here, the business operation meets the definition of a seller assisted marketing plan, the question of whether the arrangement also involved sale of

"(2) A franchise defined by the Franchise Investment Law (Division 5 (commencing with Section 31000) of Title 4 of the Corporations Code) which is registered with the California Department of Corporations or is exempt under Chapter 1 (commencing with Section 31100) of Part 2 of Division 5 of Title 4 of the Corporations Code from the necessity of registering.

"(3) Any transaction in which either the seller or purchaser or the lessor or lessee is licensed pursuant to and the transaction is governed by the Real Estate Law, Division 4 (commencing with Section 10000) of the Business and Professions Code.

"(4) A license granted by a general merchandise retailer which allows the licensee to sell goods, equipment, supplies, products or services to the general public under the retailers trademark, trade name or service mark providing that the general merchandise retailer has been doing business in this state continually for five years prior to the granting of the license and the general merchandise retailer also sells the same goods, equipment, supplies, products or services directly to the general public.

"(5) A newspaper distribution system distributing newspapers as defined in Section 6362 of the Revenue and Taxation Code.

"(6) A sale or lease to an existing or beginning business enterprise which also sells or leases equipment, products, supplies or performs services (i) which are not supplied by the seller and (ii) which the purchaser does not utilize with the equipment, products, supplies or services of the seller.

"(7) The sale of an 'ongoing business.' An 'ongoing business' is one which for at least six months previous to the sale: (i) has been operated from a given specific location, (ii) has been open for business to the general public and (iii) has had all equipment and supplies necessary for operating the business located at the given specific location.

"(8) A sale or lease or offer to sell or lease to a purchaser: (i) who has for a period of at least six months previously brought products, supplies, services or equipment which were sold under the same trademark or trade name or which were produced by the seller; and (ii) who has received on resale of such product, supplies, services or equipment an amount which is at least equal to the amount of the initial payment."

[2]Civil Code section 1812.201, subdivision (i), defines "services" to include "any assistance, guidance, direction, work, labor or services provided by the seller to initiate or maintain or assist in the initiation or maintenance of business."

partnership interests is simply irrelevant. Sales of partnerships interests are not specifically listed as an exception to the disclosure requirement of the statute. Unlike the sale of partnership interests, each of the exceptions to the statute involves a business operation which is either subject to close state regulation compliance with which is a condition of the exemption (e.g., securities or franchises) or is inherently less subject to abuse (e.g., sale of ongoing business).

*Failure to File a Disclosure Statement Is Not Necessarily Included in the Offense of Failure to Provide a Disclosure Statement to a Potential Purchaser*

■ Defendant urges that since the disclosure statement required to be provided to a prospective purchaser by Civil Code section 1812.205[3] is identical to

---

[3]Civil Code section 1812.205 reads: "At the first in-person communication with a potential purchaser or in the first written response to an inquiry by a potential purchaser, whichever occurs first, wherein the seller assisted marketing plan is described, the seller or his or her representative shall provide the prospective purchaser a written document, the cover sheet of which is entitled in at least 16-point boldface capital letters 'DISCLOSURE REQUIRED BY CALIFORNIA LAW.' Under the title shall appear in boldface of at least 10-point type, the statement: 'The State of California has not reviewed and does not approve, recommend, endorse or sponsor any seller assisted marketing plan. The information contained in this disclosure has not been checked by the state. If you have any questions about this purchase, see an attorney or other financial adviser before you sign a contract or agreement.' Nothing shall appear on the cover sheet except the title and the statement required above. The disclosure document shall contain the following information:

"(a) The name of the seller, the name under which the seller is doing or intends to do business and the name of any parent or affiliated company that will engage in business transactions with purchasers or accept responsibility for statements made by the seller.

"(b) A statement of the initial payment to be paid by the purchaser to the seller, or when not known, a statement of the approximate initial payment charged, the amount of the initial payment to be paid to a person inducing, directly or indirectly, a purchaser to contract for the seller assisted marketing plan.

"(c) A full and detailed description of the actual services the seller will undertake to perform for the purchaser.

"(d) When the seller makes any statement concerning earnings or range of earnings that may be made through the seller assisted marketing plan, he must comply with subdivision (d) of Section 1812.204 and set forth in complete form in this disclosure statement the following:

"'No guarantee of earnings or ranges of earnings can be made. The number of purchasers who have earned through this business an amount in excess of the amount of their initial payment is at least —————, which represents ————— percent of the total number of purchasers of this seller assisted marketing plan.'

"(e) If training of any type is promised by the seller, a complete description of the training and the length of the training.

"(f) If the seller promises services to be performed in connection with the placement of the equipment, product or supplies at a location from which they will be sold or used, the full nature of those services as well as the nature of the agreements to be made with the owner or manager of the location at which the purchaser's equipment, product or supplies will be placed, must be set forth.

"(g) If the seller represents orally or in writing when soliciting or offering for sale or lease or selling or leasing a seller assisted marketing plan that there is a 'buy-back' arrangement or that the initial payment is in some manner protected from loss or 'secured,' the entire and precise nature of the 'buy-back', 'protection' or 'security' arrangement shall be completely and clearly disclosed."

the statement required to be filed with the Secretary of State under Civil Code section 1812.203,[4] the latter offense is necessarily included in the former offense. This contention is without merit. " ' " 'The test in this state of a necessarily included offense is simply where an offense cannot be committed without necessarily committing another offense, the latter is a necessarily included offense.' " [Citations.]' (*People* v. *Pendleton* (1979) 25 Cal.3d 371, 382 [158 Cal.Rptr. 343, 599 P.2d 649].)" (*People* v. *Lohbauer* (1981) 29 Cal.3d 364, 369 [173 Cal.Rptr. 453, 627 P.2d 183].)

Obviously, one can fail to provide a disclosure statement to a potential purchaser without failing to provide such a statement to the Secretary of State.

Similarly, violation of Civil Code sections 1812.203 and 1812.205 are not necessarily included in the grand theft charges. Defendant did not necessarily commit grand theft by failing to file and/or provide a disclosure statement. (Cf., *People* v. *Gonda* (1983) 138 Cal.App.3d 774, 778 [188 Cal.Rptr. 295].)

*The Evidence Was Sufficient to Support a Finding that Defendant "Wilfully" Violated Civil Code Section 1812.217*

■ Defendant contends that he lacked the "wilfullness" necessary to establish a violation of Civil Code section 1812.217,[5] as he had no knowledge of the registration and disclosure requirements of Civil Code sections 1812.203/1812.205. This contention is without merit.

Penal Code section 7 provides that the word "wilfully," "when applied to the intent with which an act is done or omitted, applies simply a purpose or willingness to commit the act, or make the omission referred to. It does not require any intent to violate law, or to injure another, or to acquire any advantage."

---

[4]Civil Code section 1812.203 reads: "The seller of any seller assisted marketing plan shall file with the Secretary of State a copy of the disclosure statements required under Sections 1812.205 and 1812.206, as well as a list of the names and resident addresses of those individuals who sell the seller assisted marketing plan on behalf of the seller, prior to placing any advertisement or making any other representations to purchasers. The disclosure statements on file shall be updated through a new filing whenever material changes occur, but at least once a year. The list of salespeople shall be updated through a new filing every six months."

[5]Civil Code section 1812.217 provides: "Any person, including, but not limited to, the seller, a salesman, agent or representative of the seller or an independent contractor who attempts to sell or lease or sells or leases a seller assisted marketing plan, who willfully violates any provision of this title or employs, directly or indirectly, any device, scheme or artifice to deceive in connection with the offer or sale of any seller assisted marketing plan, or willfully engages, directly or indirectly, in any act, practice or course of business which operates or would operate as a fraud or deceit upon any person in connection with the offer, purchase, lease or sale of any seller assisted marketing plan shall, upon conviction, be fined not more than ten thousand dollars ($10,000) for each unlawful transaction, or imprisoned in the state prison, or imprisoned in county jail for not more than one year, or be punished by both such fine and imprisonment."

The principle that knowledge of the unlawfulness of an act or omission is not required was recently reiterated by our Supreme Court in *People* v. *Snyder* (1982) 32 Cal.3d 590, 592-593 [186 Cal.Rptr. 485, 652 P.2d 42]: " 'It is an emphatic postulate of both civil and penal law that ignorance of a law is no excuse for a violation thereof. Of course it is based on a fiction, because no man can know all the law, but it is a maxim which the law itself does not permit any one to gainsay . . . . The rule rests on public necessity; the welfare of society and the safety of the state depend upon its enforcement. If a person accused of a crime could shield himself behind the defense that he was ignorant of the law which he violated, immunity from punishment would in most cases result.' (*People* v. *O'Brien* (1892) 96 Cal. 171, 176 [31 P. 45]; see *Brown* v. *State Department of Health* (1978) 86 Cal.App.3d 548, 554-555 [150 Cal.Rptr. 344], and cases cited.) . . . [T]he crucial question is whether the defendant was aware that he was engaging in the conduct proscribed by that section. (*People* v. *Norton* (1978) 80 Cal.App.3d Supp. 14, 21 [146 Cal.Rptr. 343]; *People* v. *Howard* (1976) 63 Cal.App.3d 249, 256 [133 Cal.Rptr. 689]; *People* v. *Mendoza* (1967) 251 Cal.App.2d 835, 843 [60 Cal.Rptr. 5].)" (See also *Galvan* v. *Superior Court* (1969) 70 Cal.2d 851, 868 [76 Cal.Rptr. 642, 452 P.2d 930] (violation of gun registration requirement); *People* v. *Clem* (1974) 39 Cal.App.3d 539, 542 [114 Cal.Rptr. 359] (wilful violation of corporate securities law.)

In view of the required reversal, defendant's remaining contention need not be addressed.

The judgment is reversed.

Lui, J., and Danielson, J., concurred.