[No. A024100. First Dist., Div. Three. Sept. 16, 1986.]

THE PEOPLE, Plaintiff and Respondent, v.
CHARLIE BENJAMIN ROBINSON, Defendant and Appellant.

## COUNSEL

Paul Briefer for Defendant and Appellant.

John K. Van de Kamp, Attorney General, and Blair W. Hoffman, Deputy Attorney General, for Plaintiff and Respondent.

## OPINION

**ANDERSON, J.**\*—Defendant Charlie B. Robinson (appellant) appeals from a conviction for possession of marijuana.

---

*Assigned by the Chairperson of the Judicial Council.

On April 25, 1983, Officer James Miller, who had been employed in the Narcotics Detail of the San Francisco Police Department, received an anonymous telephone call regarding narcotics activity. The caller gave Officer Miller appellant's name and address and told the officer that appellant had pounds of marijuana as well as a .38 caliber gun in his hotel room at 574 Third Street, apartment No. 253, San Francisco. The officer went to the address given in an attempt to purchase marijuana. He arrived at the hotel at approximately 5:30 p.m. and went directly to appellant's room.

On arrival Officer Miller, who had neither a search warrant nor an arrest warrant with him, knocked at the door without identifying himself as a police officer. Appellant opened the door about two or three inches before the safety chain became taut and "stuck his head around the door." Then the officer said, "'Say, Charlie, what's doing? . . . I heard that something is happening up here. I was wondering if I could get a bag.'"[1] Appellant replied that he did not know what Miller was talking about and denied having any marijuana.

Through the partially open door, Officer Miller was able to see an open suitcase on a bed with a large plastic bag containing brown vegetable matter in it. Based upon his training and experience the officer concluded that the bag contained marijuana. Miller then put his foot in the door, identified himself as a police officer and demanded entry.

After getting inside, Officer Miller arrested appellant for possession of marijuana and looked into the open suitcase. The suitcase contained 2 large and 29 small plastic bags comprising marijuana, and 64 hand-rolled marijuana cigarettes. The marijuana found by the officer weighed a total of 500 grams. The suitcase also yielded $235 worth of currency—$96 were in $1 bills and the rest in $5 and $10 denominations. Appellant then gave Officer Miller permission to search the rest of the apartment. The ensuing consent search revealed a scale under the kitchen sink and a .38 caliber revolver under the mattress of the bed.

Based upon the above facts appellant was charged with possession of marijuana for sale (Health & Saf. Code, § 11359). Appellant first pled not guilty to the charge. However, after his motions to suppress evidence (Pen. Code,[2] § 1538.5) and to dismiss the information (§ 995) were denied, appellant withdrew his plea of not guilty and entered a guilty plea to the lesser charge of possession of marijuana (Health & Saf. Code, § 11357). Following a sentencing hearing, the court suspended the imposition of sentence and placed appellant on three years' probation.

---

[1]"Bag" is a street term (slang) for marijuana.

[2]Unless otherwise indicated, all statutory references are to the Penal Code.

Appellant's principal contention on appeal is that the warrantless entry of his hotel room and the ensuing search were unlawful, calling for reversal of the conviction. (*Payton* v. *New York* (1980) 445 U.S. 573 [63 L.Ed.2d 639, 100 S.Ct. 1371]; *People* v. *Ramey* (1976) 16 Cal.3d 263 [127 Cal.Rptr. 629, 545 P.2d 1333].) We disagree with appellant and affirm the judgment.

■ While it has been generally held that warrantless arrests conducted in the home are unlawful in the absence of exigent circumstances (*Payton* v. *New York, supra,* 445 U.S. 573, 588 [63 L.Ed.2d 639, 651-652]; *People* v. *Ramey, supra,* 16 Cal.3d 263, 276), there is an apparent statutory exception to that rule in California. Section 836 provides in pertinent part that a peace officer may arrest a person with or without a warrant "(1) Whenever he has reasonable cause to believe that the person to be arrested has committed a public offense in his presence."

In the case at bench undercover Officer Miller rightfully standing in the common hallway of the building (*People* v. *Szabo* (1980) 107 Cal.App.3d 419, 428 [165 Cal.Rptr. 719]; *People* v. *Howard* (1976) 63 Cal.App.3d 249, 254 [133 Cal.Rptr. 689]), observed in plain view a large quantity of marijuana in appellant's apartment. Since the possession of marijuana for sale constitutes a felony under the law (Health & Saf. Code, § 11359), the observation of the contraband was tantamount to witnessing the commission of a public offense (i.e., a commission of a public offense in the officer's presence). Given the fact that section 836 explicitly authorizes a warrantless arrest in such an instance without listing any exception and also given the fact that section 836 has not been held unconstitutional in any case of which we are aware, appellant's arrest without a warrant and the ensuing seizure of the contraband must be upheld upon this statute alone.

But even if we assume that section 836 is subject to the limitations set out in *Ramey,* the action of the police officer must be sustained on the ground that exigent circumstances existed which justified the warrantless arrest and search in this case.

■ "Exigent circumstances" justifying a warrantless arrest in a house or apartment mean "*an emergency situation requiring swift action to prevent imminent danger to life or serious damage to property, or to forestall the imminent escape of a suspect or destruction of evidence.*" (*People* v. *Ramey, supra,* 16 Cal.3d at p. 276, italics added; *People* v. *Keltie* (1983) 148 Cal.App.3d 773, 779 [196 Cal.Rptr. 243].) The determination whether exigent circumstances existed constitutes a factual question. "There is no ready litmus test for determining whether such circumstances exist, and in each case the claim of an extraordinary situation must be measured by the

facts known to the officers." (*People* v. *Ramey, supra,* 16 Cal.3d at p. 276; see also *People* v. *Edwards* (1981) 126 Cal.App.3d 447, 458 [178 Cal.Rptr. 876]; *James* v. *Superior Court* (1978) 87 Cal.App.3d 985, 991 [151 Cal.Rptr. 270].)

■ In the case at bench the totality of the circumstances demonstrates that the delay resulting from an eventual obtaining of an arrest warrant would have irrevocably resulted in the loss or the destruction of evidence and that as a consequence, an emergency situation was present as a matter of law. The pertinent facts reveal that Officer Miller learned from an anonymous informer that appellant had been engaged in dope peddling, and had "pounds of marijuana" as well as a .38 caliber gun in his apartment. The anonymous informer also revealed appellant's name and address. However, when Officer Miller, clad in plainclothes and posed as a street customer, went to appellant's place of abode trying to buy marijuana from him, his offer was outright rejected by appellant who became obviously suspicious of a stranger showing up unannounced and without proper references. At the same time the officer observed, in plain sight, a large quantity of marijuana which was already packed in a suitcase. In this set of circumstances the officer faced an emergency situation indeed. Since appellant's suspicion was already aroused and since the incriminating evidence (the marijuana) was in a mobile condition, the delay concomitant with obtaining an arrest warrant would have inexorably led to the destruction or loss of the evidence. Considering this extraordinary situation, the police officer was fully justified (if not mandated) in taking the immediate steps of revealing his identity, arresting appellant and seizing the contraband. In short, as the record established the existence of exigent circumstances, the case falls within the exception to the rule requiring a warrant. Consequently, appellant's arrest and the seizure of the contraband were lawful under *Ramey* and its progeny.

Although not necessary for the determination of the present controversy, it bears mentioning that *Ramey* is clearly distinguishable from the case at bench. In *Ramey,* the police had probable cause to arrest the defendant for the offense of receiving stolen property, and also had plenty of time to obtain an arrest and search warrant before going to defendant's residence. By contrast, Officer Miller's information of appellant's criminal activity rested solely upon the uncorroborated tip of an anonymous caller. It is, of course, axiomatic that the information of an anonymous informant does not provide the requisite probable cause for issuance of either an arrest warrant or a search warrant unless such information is sufficiently corroborated. (*People* v. *Ramey, supra,* 16 Cal.3d at p. 269; see also *Aguilar* v. *Texas* (1964) 378 U.S. 108, 114-115 [12 L.Ed.2d 723, 728-729, 84 S.Ct. 1509]; *People* v. *Hill* (1974) 12 Cal.3d 731, 760-761 [117 Cal.Rptr. 393, 528 P.2d

1], overruled on other grounds in *People* v. *DeVaughn* (1977) 18 Cal.3d 889, 896, fn. 5 [135 Cal.Rptr. 786, 558 P.2d 872]; *People* v. *Abbott* (1970) 3 Cal.App.3d 966, 971 [84 Cal.Rptr. 40].) It follows that Officer Miller did not have probable cause to obtain a warrant prior to visiting appellant. However, when his suspicion based on the call of the anonymous informer ripened into probable cause by noticing the contraband in plain view on appellant's premises, the emergency situation was already at hand requiring immediate measures on his part to prevent the destruction or loss of the evidence.

Since, in the present case, the warrantless arrest and search were justified under both the explicit statutory authority of section 836 and "the exigent circumstances" exception set forth in *Ramey* and its progeny, the additional issues raised by appellant need not be decided.

The judgment is affirmed.

Barry-Deal, J., concurred.

**WHITE, P. J.**—I respectfully dissent. Upon review of the reporter's transcript of the evidence adduced at the preliminary hearing, the trial court's express findings based thereon, and the incidental colloquy between court and respective trial counsel, it is manifest that the pretrial Penal Code section 1538.5 ruling is contrary to law. The judgment must be reversed.

Appellant, in the superior court, filed a "compound motion" invoking at once both Penal Code section 1538.5 and Penal Code section 995. By stipulation, appellant's section 1538.5 motion was heard de novo based entirely on the transcript of the preliminary examination, the trial court sitting as the fact finder with incident powers. (*People* v. *Laiwa* (1983) 34 Cal.3d 711, 718 [195 Cal.Rptr. 503, 669 P.2d 1278].) Upon reviewing Officer Miller's preliminary hearing testimony on direct examination in light of the cross-examination, reasons, in all candor, do appear, I think, for taking a dim view of Miller's credibility. However, the magistrate found his testimony "very credible," stating that "I believe him"; and the presumption this court indulges is that the trial court likewise judged his credibility and believed his testimony. Under our standard of review, the trial court's factual findings, expressed or implied, must be upheld if they are supported by substantial evidence—i.e., Miller's testimony. (*People* v. *Lawler* (1973) 9 Cal.3d 156, 160 [107 Cal.Rptr. 13, 507 P.2d 621].)

The trial court expressly found on page 3 of the reporter's transcript that: "This is *a warrantless entry to arrest* on account of the fact that the officer, according to the testimony of the preliminary hearing, *has probable cause*

*to believe that a felony had been committed,* what he sees through the door."
(Italics added.)

Unquestionably, Officer Miller's testimony supports a finding that he entered appellant's apartment with the intent to arrest appellant for possession of marijuana. Miller testified that he observed the contraband in plain sight on appellant's bed moments before his forcible entry. That his entry was forcible and not consensual is likewise indisputably established by Miller's testimony. On direct examination Officer Miller testified as follows:

"Q. Upon noticing the substance that you opined was marijuana, what did you do, if anything?

"A. *I put my foot a little bit in the door so he could not close it completely, pulled out my police star from my pocket and identified myself as a police officer and demanded entrance.*

"Q. Did Mr. Robinson open the door at that point?

"A. Yes, he did. He closed the door slightly, took the chain off and opened it.

"Q. Once the door was opened, what did you do?

"A. *Once the door was opened I walked inside and placed Mr. Robinson under arrest for possession of marijuana* and viewed the suitcase which revealed the baggies and the rolled marijuana cigarettes." (Italics added.)

On cross-examination, Miller explained, when questioned about his "demanded entrance," as follows: "A. That's correct, but it is also based upon the fact that if he had not opened the door and had closed the door *I would have demanded entry by forcibly opening the door,* so to that extent it is all combined into that request." (Italics added.)

A fundamental change was worked in California's law of arrest within the home in *People* v. *Ramey* (1976) 16 Cal.3d 263 [127 Cal.Rptr. 629, 545 P.2d 1333], opinion by Mosk, J., when our state's Supreme Court decided "that the protection of article I, section 13, of the California Constitution and the Fourth Amendment of the federal Constitution against violation of the right of the people to be secure in their persons and houses against unreasonable seizures applies to arrests within the home, and that warrantless arrests within the home are per se unreasonable in the absence of exigent circumstances." (*Ramey, supra,* 16 Cal.3d at pp. 275-276.) The *Ramey* court, quoting from *Commonwealth* v. *Forde* (1975) 367 Mass. 798

[329 N.E.2d 717 at page 722, footnote 3], pointedly limited the application of its newly adopted rule, holding that it was to be "limited to warrantless entries of dwellings for the purpose of making arrests within those dwellings." (*Ramey, supra,* at p. 275, fn. 5.) Recognizing, in addition, that prior California appellate decisions "assumed the legality of a warrantless entry into a home to make a felony arrest in the absence of exigent circumstances, providing there is probable cause," the *Ramey* court announced, excepting the case at bar, that "the rule we now adopt will apply only to arrests made after this opinion becomes final." (*Ramey, supra,* at p. 276, fn. 7.)

In *Payton* v. *New York* (1980) 445 U.S. 573 [63 L.Ed.2d 639, 100 S.Ct. 1371], the federal Supreme Court, recognizing that ". . . [a] longstanding, widespread practice is not immune from constitutional scrutiny," ruled in accord with the *Ramey* court, holding that "the Fourth Amendment to the United States Constitution, made applicable to the States by the Fourteenth Amendment, *Mapp* v. *Ohio,* 367 U.S. 643; *Wolf* v. *Colorado,* 338 U.S. 25 prohibits the police from making a warrantless and nonconsensual entry into a suspect's home in order to make a routine felony arrest." (*Payton, supra,* at pp. 576, 600 [63 L.Ed.2d at pp. 644, 659].) Further, the *Payton* court after observing that "[i]n terms that apply equally to seizures of property and to seizures of persons, the Fourth Amendment has drawn a firm line at the entrance to the house," held that "[a]bsent exigent circumstances, that threshold may not reasonably be crossed without a warrant." (*Id.,* at p. 590 [63 L.Ed.2d at p. 653].)

Measured by the rule in *Ramey* and *Payton,* the trial court's ruling denying appellant's Penal Code section 1538.5 motion is infirm. Two obvious reasons accounting for the court's infirm ruling appear on the record. Opining that the "facts of *Ramey* are nothing like the facts of this case," the trial court concluded that "this case . . . is very close to *Nichols.* . . ." (*People* v. *Nichols* (1969) 1 Cal.App.3d 173 [81 Cal.Rptr. 481].) Defense counsel, attorney Paul Briefer, urged to no avail that "*Nichols* was a *pre-Ramey* case." The court remained set in its view, stating: "I know it was, but I don't think *Ramey* governs the situation.

"In *Ramey* they had all the time in the world to go get a warrant. Ramey was not a situation with a cop standing at the door with marijuana in plain view."

In search and seizure jurisprudence, "[o]nly rarely does a factual situation arise in exact conformity with a reported case. Arguments from principle . . . are at least as effective as those from precedent. But precedent certainly cannot be ignored." (Krause, Cal. Search and Seizure Practice (Cont.Ed.Bar 1977) p. 129.) Failing to consider, I think, that *Ramey* and *Payton* were

decided consistent with long standing Fourth Amendment principles, the trial court reasoned erroneously when distinguishing *Ramey* on its facts. (See, *Welsh* v. *Wisconsin* (1984) 466 U.S. 740 [80 L.Ed.2d 732, 104 S.Ct. 2091].)

When reasoning to its decision, the trial court remarked that it "sort of liked *Nichols* for the good old days when they went in and arrested people for smoking a joint." However, the *Ramey* court, as heretofore noted, expressly abandoned the warrantless home arrest case precedents decided during "the good old days," reasoning that the "intrusion by the state into the privacy of the home for any purpose is one of the most awesome incursions of police power into the life of the individual." (*Ramey, supra,* 16 Cal.3d at p. 275.) Stated with more clarity, at the time Files, P. J., correctly decided *Nichols, supra,* 1 Cal.App.3d 173, California's Supreme Court recognized a distinction between a warrantless entry to seize contraband and a warrantless entry to make an arrest; for the latter, the arrest was not made unreasonable by bypassing the magistrate if premised upon existing probable cause, while the former was unreasonable in the absence of preceding judicial authorization, i.e., a search warrant. Consequently, Officer Bagdonis, upon smelling the odor of marijuana smoke in Nichols' house, could, without an arrest warrant, forcibly enter the same with probable cause to arrest Nichols for either possessing marijuana, or committing a misdemeanor in his presence. (*Id.,* at pp. 175-176.) Manifestly, if it had occurred post-*Ramey,* Nichols' warrantless arrest within his house would be adjudged constitutionally unreasonable.

In the case at bench, although Officer Miller admitted under cross-examination that he did not smell the odor of marijuana, he did, as the trial court expressly found, have probable cause to arrest appellant for a felony or offense committed in his presence, i.e., Miller testified that he recognized the contraband in plain view. Unquestionably, however, the trial court's error was inevitable because it apparently chose to ignore that the state and federal Supreme Courts had withdrawn their approval of a *longstanding widespread (police) practice* that reappeared in this case. It bears emphasis that the *Ramey* and *Payton* courts placed the warrantless entry of the house to arrest on the identical constitutional footing as a warrantless entry of a dwelling for a search. In the absence of exigent circumstances justifying Officer Miller bypassing the magistrate, Miller's forcible warrantless entry to arrest appellant was *per se unreasonable* under the Fourth and Fourteenth Amendments to the federal Constitution and article I, section 13 of the California Constitution.

The prosecution made no attempt to justify Officer Miller's per se unreasonable police conduct in this case. The state presented no evidence

showing the existence of a genuine exigency or bona fide emergency. Moreover, it bears emphasis that the trial court expressly admitted to knowing that the prosecution made no claim that the evidence met its heavy burden of proof in that it showed an emergency situation, one requiring swift action to prevent the imminent destruction or loss of the observed contraband marijuana, thereby justifying Miller's warrantless entry to arrest appellant. I quote from page 3 of the reporter's transcript, wherein defense counsel Briefer is winding down his argument explaining that the state's reliance on *People* v. *Nichols, supra,* 1 Cal.App.3d 173, was misplaced and inapposite:

"[MR. BRIEFER:] I don't know if the Court has any questions—

"THE COURT: Nope.

"Is it submitted?

"MR. BRIEFER: *Further, there was no claim of an exigency.*

"THE COURT: *I understand that,* because I think here it is a warrantless entry to arrest when he has probable cause to believe a felony had been committed. (Italics added.)

Obviously, the principle underlying the fundamental change in the law of arrest within the home wrought in *Ramey* did "govern the situation." Moreover, because the trial court's mind set, when ruling, postulated that "[t]he facts of *Ramey* are nothing like the facts of this case," and that "[t]his case . . . is very close to *Nichols* . . . ," the court found no occasion to reason in terms of a *prima facie case* and a *burden to show proper justification.* (See *Badillo* v. *Superior Court* (1956) 46 Cal.2d 269, 272 [294 P.2d 23].) *Badillo,* of course, is a "forcible entry-warrantless search" case predating *Ramey* and *Payton;* but Traynor, J.'s analysis is as sound today herein as the day he wrote it. If *"Badillo* analysis" had taken hold in this case, I do not think the trial court would have erred. *Badillo* instructs that when the evidence in this case showed a prima facie case of illegal entry by establishing that Officer Miller's forced entry was not authorized by a search warrant or an arrest warrant, the burden then rested on the prosecution to show not only that Miller had probable cause to forcibly enter, but to show, in addition, that exigent circumstances made the forcible entry to arrest necessary. *Badillo* further teaches, when paraphrased, that "[s]ince no such evidence was presented, it must be taken as established [at trial and on appeal] that [Miller's] entry [to arrest appellant within his home] was unlawful." (*Ibid.*) It clearly appears that Miller obtained the currency and marijuana appellant sought to exclude from evidence as a direct result

of Miller's unlawful entry to arrest. The trial court erred when ruling not to exclude the evidence, in light of the prosecution's failure to carry its burden to show necessity for a warrantless entry to arrest. This court errs when not reversing the judgment on the grounds that the evidence that formed the basis for appellant's conviction was obtained by the state in violation of constitutional guarantees.

The lead opinion sets forth alternate grounds for affirming the judgment. Finding both grounds untenable, I dissent.

I fear my learned colleagues send an erroneous message to San Francisco's "finest," and to Officer Miller in particular, when holding that appellant's "warrantless arrest and search were justified under . . . the explicit statutory authority of section 836. . . ." (See lead opn., *ante,* at p. 533; also at p. 531.) Officer Miller, it appears of record, routinely employed a police practice, revisiting "the good old days," during the brief five months he had been assigned to the narcotic's detail. Essentially because cross-examination did not refresh Miller's recollection as to how many warrantless home entries to arrest he had participated in premised upon his plain view of contraband when corroborating anonymous tips, the following stipulation was entered, to wit:

"Ms. LANKFORD-GROSS: Your Honor, assuming relevance the People are prepared to stipulate that there are many cases and that this officer has participated in many cases in which anonymous tips resulted in plain view seizures of controlled substances and I think that solves the problem. This officer has been detailed to Narcotics, and on numerous occasions he has seized controlled substances on anonymous tips. That should be sufficient for this preliminary hearing.

"THE COURT: That they were in plain view?

"Ms. LANKFORD-GROSS: That they were in plain view.

"THE COURT: Agreed?

"MR. BRIEFER: Yes. That's what I was trying to establish.

"THE COURT: Your next question."

Obviously the message sent is not only erroneous, it is likely, for at least two obvious reasons I don't pursue, to render cost inefficient San Francisco law enforcement's vital and continuous war against illicit narcotics and controlled substances. Officer Miller's method of operation exposes a total lack of understanding that Fourth Amendment principles, presently at least,

protect the security interests of narcotic suspects within their house equal to that constitutionally afforded law abiding persons within their houses, and all other persons similarly situated.

By virtue of the doctrine of constitutional limitations, section 836 is *not* a statutory exception to the rule in *Ramey* and *Payton.* (See lead opn., *ante,* at p. 531.) The Legislature in section 836 codified "the ancient common-law rule that a peace officer was permitted to arrest without a warrant for a misdemeanor or felony committed in his presence as well as for a felony not committed in his presence if there was reasonable ground for making the arrest." (See *United States* v. *Watson* (1976) 423 U.S. 411, at p. 418 [46 L.Ed.2d 598, at pp. 605-606, 96 S.Ct. 820].) However, *Ramey* and *Payton* recognized as a basic principle of Fourth Amendment law that the warrantless entry of a suspect's premises in order to seize that suspect is per se unreasonable unless the police can show one of a few in number and carefully delineated exceptions to the warrant requirement justifying the entry. (*Welsh* v. *Wisconsin, supra,* 466 U.S. at pp. 748-751 [80 L.Ed.2d at pp. 742-744, 104 S.Ct. at pp. 2097-2098].) On this record, then, the message this court is duty bound to send to Miller and his fellow officers is that ". . . the mere existence of [a] statute [§ 836] or practice [herein Miller's] even of long standing, is no defense to an unconstitutional practice." (Marshall, J., dis. in *United States* v. *Watson, supra,* 423 U.S. at p. 443 [46 L.Ed.2d at p. 620].) By now it is obvious that my view is that reasoned analysis in strict accord with our appellate standard of review compels the conclusion that Officer Miller's warrantless entry affecting appellant's arrest was constitutionally deficient, i.e., unreasonable, without necessity or justification. This court's obligation, and that of Officer Miller, is foremost to enforce the state and federal Constitutions as interpreted in *Ramey* and *Payton,* and not the Legislature's enactment, i.e., section 836. Indeed, section 836 is constitutional when read and applied consistent with the warrant requirements imposed by the Fourth Amendment.

My colleagues' lead opinion alternately upholds appellant's warrantless home arrest as being constitutional in that it was justified by exigent circumstances existing as a matter of law. (See lead opn., *ante,* at p. 532.) I continue to disagree. The existence of an emergency situation is a question of law once the facts are determined. (Krause, Cal. Search and Seizure Practice, *op. cit. supra,* at pp. 116-117.) Officer Miller's testimony, of course, provides us with facts; but even when Miller's account of his warrantless entry and arrest is viewed in a light most favorable to the prosecution, the prosecution, as aforestated, did not carry its "heavy" burden to show justification, i.e., exigent circumstances. Viewed most favorably, Miller testified that he, after demanding entrance, entered appellant's apartment in order to immediately arrest him because, and only because, his plain

view of the marijuana gave him probable cause to arrest. The trial court found accordingly, and under our standard of review, i.e., "substantial evidence," this court is bound by the trial court's finding. (*People* v. *Lawler, supra,* 9 Cal.3d at p. 160.)

To be lawful police conduct, *Ramey* and *Payton* required that Officer Miller's decision to effect a warrantless entry to arrest be based on two coexisting subjective beliefs reasonably held; first, probable cause to arrest, and second, that he was confronted by "exigent circumstances" of necessity requiring that he by-pass the magistrate's detached judgment and authorization. The trial court found that Miller's plain view gave him "probable cause." I agree, in light of our standard of review. Miller, then, did have probable cause to arrest, but, on this record, did not lawfully enter to arrest when doing so without the authority of an arrest warrant because he never articulated a personal belief that he was faced with exigent circumstances making it necessary. My colleagues' efforts in effect expressing the belief on his behalf, I decry and simply cannot abide.

The trial court, contrary to the state's contention for the first time on appeal in this court, did not make an express finding that exigent circumstances justified Miller's presumptively unreasonable entry and arrest. Indeed, the prosecution's approach to this case never contemplated presentation of evidence requiring the trial court to make a finding, expressly or impliedly, of justification, i.e., "exigent circumstances." The prosecutor's argument prior to submission of appellant's motion to exclude at the close of the preliminary examination is found at pages 54-55 of the preliminary hearing transcript. It is concise, containing no assertion of a showing justifying appellant's warrantless arrest on the basis of exigent circumstances. It is best summarized by quoting in relevant part, to wit: "The officer went to that location and attempted to corroborate the information. There was [*sic*] no 16 narcotic officers assaulting the place. There was [*sic*] no demands, 'Police, open up.' There was no search of the place until there was some corroboration.

"The officer knocked on the door, made no demands, and Charlie Robinson opened the door. From there the police officer in a public area—whether he went in through the iron gate or whether he went in with someone, he was in a public common hallway where he had a right to be—and he was investigating a special incident, a specific series of sales from that location. Charlie Robinson opened the door. Through the door the officer saw basically the important evidence in this case. Additionally, after the arrest and after the consent he retrieved a scale and some empty plastic bags and a loaded gun, but initially the officer saw in a shallow suitcase very, very large quantities of material that he recognized—and correctly, it turns

out—as marijuana. He had, in fact, found a major seller of marijuana just as he is employed to do.

"I would submit that the evidence violated no right of privacy of Mr. Robinson under either the federal or state [C]onstitution.

"We submit the matter."

Frankly, it is baffling and frightening to me that even one prosecutor, after *Coolidge* v. *New Hampshire* (1971) 403 U.S. 443, 474-475 [29 L.Ed.2d 564, 587-588, 91 S.Ct. 2022], *Payton, supra,* 445 U.S. at page 586 [63 L.Ed.2d at pages 650-651], and *Ramey, supra,* 16 Cal.3d at pages 275-276, would prosecute this case without demonstrating some awareness that both our state and federal Supreme Courts recognize, as a basic principle of Fourth Amendment law, that searches and seizures (including arrests) inside a suspect's premises without a warrant are presumptively unreasonable unless and until the police show the presence of exigent circumstances. (See *Welsh* v. *Wisconsin, supra,* 466 U.S. at pp. 748-751 [80 L.Ed.2d at pp. 742-744, 104 S.Ct. at pp. 2097-2098].)

In any view, it is manifest that Officer Miller's testimony is devoid of any specific factual circumstances giving rise to a finding of reasonable belief on his part that his warrantless entry and arrest was necessary to prevent the imminent destruction by appellant of the exposed marijuana. (See *People* v. *Hamilton* (1969) 71 Cal.2d 176, at p. 178 [77 Cal.Rptr. 785, 454 P.2d 681], opn. by Sullivan, J.) In *Parsley* v. *Superior Court* (1973) 9 Cal.3d 934, 940 [109 Cal.Rptr. 563, 513 P.2d 611] (opn. by Mosk, J.), our Supreme Court reiterated, I would think for the benefit of the police, prosecutors and courts alike, its standard for judging the existence of exigent circumstances. "Such an emergency, therefore, can be judged only in light of circumstances of which the officer is aware at the latter moment," i.e., "time of entry." Clearly, then, "the key to permissible unannounced entry is the knowledge of exigent circumstances possessed by police officers at the time of entry." (*Ibid.*) Stated otherwise, "[t]he *Parsley* court reasoned that only the officer has the ability to decide whether the required emergency situations exist at the time of entry." (Krause, Cal. Search and Seizure Practice, *op. cit. supra,* at p. 116.) *Hamilton* and *Parsley,* of course, are case precedents affording instruction when judging a record for evidence of *exigent circumstances* in the context of excusing compliance with sections 1531 and 844 of the Penal Code, but obviously the identical standard obtains when judging for evidence showing exigency in the case at bench. Justice Mosk, in *Ramey, supra,* 16 Cal.3d at page 276, confirmed this fact when

he reinstructed that "in each case the claim of an extraordinary situation must be measured by the facts known to the officers."

Officer Miller, in his testimony, never articulated that either before or at the time of entry, he believed it was necessary to forego obtaining a warrant to prevent the imminent destruction of evidence. Moreover, Miller never testified to any facts or circumstances reasonably warranting even an inference that he held such a subjective belief. Miller never testified that it became *obvious* to him that appellant appeared to or became *suspicious* because he was *a stranger showing up unannounced and without proper references*. (See lead opn., *ante,* at p. 532.) Indeed, while information provided by an anonymous informant often provides a basis for an officer's belief that he faces an emergency, Miller's anonymous informer, on this record, never mentioned "proper references," or any other information even remotely likely to induce in Miller a belief that it was necessary to force entry, revealing his true identity, to prevent the imminent destruction of the marijuana. "Imminent" is a key word in *Ramey*'s definition of "exigent circumstances." (*James* v. *Superior Court* (1978) 87 Cal.App.3d 985 [151 Cal.Rptr. 270].) "'Imminent' means: 'impending'; 'about to happen'; 'immediate'; 'threatening'; 'ready to take place'; 'near at hand'; all to the extent that the event in question will occur at once unless speedy, swift and prompt police action to arrest is forthcoming." (*James* v. *Superior Court, supra,* at p. 991.) When measured by the facts known and articulated by Officer Miller, the record does not demonstrate exigent circumstances. The People failed to meet their heavy burden.

I conclude that it is for this reason the lead opinion makes no pretense at upholding Miller's presumptively unreasonable police conduct arresting appellant by first finding substantial evidence that Miller held a "subjective belief" based on facts known to him, that he forced entry out of necessity in response to a *genuine* or *bona fide* emergency; and then secondly concluding that Miller's "subjective belief" was reasonably held, thereby justifying appellant's warrantless home arrest. In lieu thereof, my colleagues in effect assume the People's heavy burden by implicitly attributing to Miller's state of mind facts and circumstances he did not articulate under oath, thereby affording the state lawful justification that the prosecution never undertook to prove. All this is accomplished by the impermissible expedient of finding "exigent circumstances as a matter of law." "Impermissible" because, as I see it, this court's judicial temperament should at least approach if not equate that of the Supreme Court and reveal "hesitation in finding exigent circumstances, especially when warrantless arrests in the home are at issue. . . ." (*Welsh* v. *Wisconsin, supra,* 466 U.S. at p. 750 [80 L.Ed.2d at pp. 743-744, 104 S.Ct. at p. 2098].) In light of the fact that this record does not reasonably admit to a finding of the existence of a

*genuine bona fide exigency* which Justice Mosk contemplated in *Ramey,* I fear that my colleagues have written article I, section 13 of the California Constitution and the Fourth Amendment of the federal Constitution out of section 836. This judicial surgery they perform notwithstanding the edict of our Supreme Courts, state and federal, to the contrary. As I see the lead opinion, by holding on this record that an "emergency situation was [shown] present as a matter of law," my colleagues permit the exception to swallow the rule. This, we are not permitted to do. Obviously whether there is time to get a warrant is only one relative fact at best, i.e., relative to other facts and circumstances creating a true emergency never articulated by Miller or otherwise shown by the prosecution in this case. From these facts and circumstances of record, there exists no basis for reasonably concluding that appellant would have destroyed or removed the contraband if Miller had departed without uncovering his true identity. Assuming that Miller was able to secure a magistrate's authorization, there is no basis from the record for concluding that execution of the warrant (search or arrest) would not have legally obtained the evidence at issue. As it is, however, Miller acted unreasonably without necessity, and the judgment should be reversed.