[No. C015690. Third Dist. May 18, 1995.]

THE PEOPLE, Plaintiff and Respondent, v.
JOHN DAVID HULL, Defendant and Appellant.

## COUNSEL

Rachel Lederman, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Robert R. Anderson, Assistant Attorney General, Cynthia G. Besemer and Margaret Venturi, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

NICHOLSON, J.—The defendant, John David Hull, stole stereo speakers from a vehicle. The vehicle, however, had been placed on the street as bait by the Roseville Police Department, and the speakers contained a tracking device and were covered with powder visible in ultraviolet light. Within minutes of the burglary, the officer followed the tracking device signal to a residence, entered the residence without a warrant, and arrested the defendant, who was inside the residence. The defendant's motion to suppress the evidence obtained when the officer entered the residence was denied, and, after pleading guilty, the defendant appeals.

We hold that whether exigent circumstances justified a warrantless entry into the residence is determined by viewing the circumstances objectively. Turning to the facts of this case, we conclude the entry was justified by exigent circumstances because of the ephemeral nature of the evidence within the residence. Accordingly, we affirm.

## FACTS

On June 30, 1992, at 12:25 a.m., Roseville Police Officer William Herring responded to a "signal 1000," an alarm activation in one of the City of Roseville's bait vehicles. He discovered the driver's side window of the 1979 Chevy Luv pickup was broken and two Stillwater Kicker brand speakers were gone. These speakers each contained an electronic tracking device which allowed the police to trace them. Both speakers were coated with a fluorescent green powder which was visible only under ultraviolet light and would stick to the hands of those who touched the speakers.

Officer Herring began driving in the vicinity, attempting to track the speakers. Less than twenty minutes later, the tracking device led him to a residence about three or four miles from the truck.

As Officer Herring waited on the street beside his patrol car for other officers to arrive, he saw two males in a lighted back bedroom through an uncovered window. When a second officer arrived, someone in the bedroom looked toward the street, appeared to see the police car, and moved from the bedroom toward the front of the house. Officer Herring walked to the front porch, met Aaron Dancer (Aaron) as he came out of the house, had a brief conversation with Aaron, then asked him to stand with another officer. After Aaron left the house, the front door remained open.

While outside with Aaron, Officer Herring saw the defendant move from the hallway to the living room where he sat on the couch. The officer's pocket detector continued to indicate the speakers were in the house. As the officer walked to the open, unscreened front door, he could see one speaker on the coffee table near the couch where the defendant sat. The defendant made no attempt to flee.

On seeing the defendant and the speaker, Officer Herring entered the house and immediately arrested him. A codefendant, David Dancer (David), was also arrested. Officer Herring then searched the house for other occupants. He discovered the second speaker in a back bedroom. The record does not reflect Officer Herring's reason for believing he could enter the house without a warrant.

David directed the police to the truck which he had been driving earlier in the evening, and the police found a wrist rocket-type sling shot which the police believed had been used, along with glass marbles found in David's pocket, to break the bait vehicle's window. Using an ultraviolet light, the police found fluorescent green powder on the defendant's and David's hands and in David's truck.

## PROCEDURE

The defendant and David were charged with vehicle burglary and receiving stolen property. At a joint preliminary hearing, David moved to suppress the evidence pursuant to Penal Code section 1538.5, and the magistrate denied the motion. In denying the motion, the magistrate relied on *People* v. *Robinson* (1986) 185 Cal.App.3d 528 [229 Cal.Rptr. 851], which held a warrantless entry into a residence is justified if a crime (for example, receiving stolen property) is being committed in the officer's presence. He found there were no exigent circumstances.

David renewed his attempt to suppress the evidence in the trial court through a motion to set aside the information pursuant to Penal Code section 995, and the defendant moved to suppress the evidence pursuant to Penal Code section 1538.5. The defendant and David stipulated with the prosecution that the trial court could consider both motions based on the transcript of David's earlier motion to suppress. The trial court denied the motions. It noted the need to preserve evidence concerning where the green powder could be found presented an exigency. It also relied on *People* v. *Robinson*, *supra*, 185 Cal.App.3d 528. Since then, we have stated our disagreement with the holding in *Robinson*. (*People* v. *Ortiz* (1995) 32 Cal.App.4th 286, 291-292, fn. 2 [38 Cal.Rptr.2d 59].)

Caught green-handed, the defendant pled guilty to receiving stolen property and was placed on probation. As a condition of probation, he was ordered to serve a county jail term of 180 days. He appeals. Since he raises only the issue of whether his motion to suppress was properly decided, his appeal is operative without a certificate of probable cause. (Pen. Code, § 1237.5; Cal. Rules of Court, rule 31(d).)

## DISCUSSION

The defendant claims the evidence obtained in the search of the home should have been suppressed as an unreasonable search or seizure in violation of the Fourth Amendment. We first recite the exclusionary rule and then summarize the appropriate method of dealing with such claims.

### A. *The Exclusionary Rule*

█ "When evidence is obtained in violation of the Fourth Amendment, the judicially developed exclusionary rule usually precludes its use in a criminal proceeding against the victim of the illegal search and seizure. [Citations.] The [United States Supreme] Court has stressed that the 'prime

purpose' of the exclusionary rule 'is to deter future unlawful police conduct and thereby effectuate the guarantee of the Fourth Amendment against unreasonable searches and seizures.' [Citation.] Application of the exclusionary rule 'is neither intended nor able to "cure the invasion of the defendant's rights which he has already suffered." ' [Citations.] Rather, the rule 'operates as "a judicially created remedy designed to safeguard Fourth Amendment rights generally through its deterrent effect, rather than a personal constitutional right of the party aggrieved." ' [Citations.] [¶] As with any remedial device, application of the exclusionary rule properly has been restricted to those situations in which its remedial purpose is effectively advanced." (*Illinois* v. *Krull* (1987) 480 U.S. 340, 347 [94 L.Ed.2d 364, 373, 107 S.Ct. 1160].)

■   When a defendant asserts relevant evidence should be suppressed under the exclusionary rule, the trial court, after resolving factual conflicts, undertakes a legal test which has two parts. In the first part of the test, the court assesses whether the actions of the officer in obtaining the evidence were objectively reasonable. The officer's state of mind is irrelevant to this inquiry. (*Scott* v. *United States* (1978) 436 U.S. 128, 135-136 [56 L.Ed.2d 168, 176-177, 98 S.Ct. 1717].)

"In view of the deterrent purposes of the exclusionary rule, consideration of official motives may play some part in determining whether application of the exclusionary rule is appropriate *after* a statutory or constitutional violation has been established. *But the existence vel non of such a violation turns on an objective assessment of the officer's actions in light of the facts and circumstances confronting him at the time.*" (*Scott* v. *United States, supra*, 456 U.S. at pp. 135-136 [56 L.Ed.2d at pp. 176-177], italics added; accord, *Maryland* v. *Macon* (1985) 472 U.S. 463, 470-471 [86 L.Ed.2d 370, 378, 105 S.Ct. 2778]; and see *Arizona* v. *Evans* (1995) 514 U.S. __ [131 L.Ed.2d 34, 115 S.Ct. 1185].) "[T]hat the officer does not have the state of mind which is hypothecated by the reasons which provide the legal justification for the officer's action does not invalidate the action taken as long as the circumstances, viewed objectively, justify that action." (*Scott, supra*, 456 U.S. at p. 138 [56 L.Ed.2d at p. 178].)

If this first part of the test shows a violation of the Fourth Amendment, that is, an objectively unreasonable search or seizure, prosecutorial use at trial of the evidence obtained from the search or seizure is "usually preclude[d]." (*Illinois* v. *Krull, supra*, 480 U.S. at p. 347 [94 L.Ed.2d at p. 373].) However, the second part of the test, to determine whether exclusion of the evidence would advance the remedial purpose of the exclusionary rule, is undertaken only if the search or seizure fails the first part of the test.

In this case, as we explain in detail later, the search and seizure were objectively reasonable. Therefore, we do not consider the second part of the test, and the officer's state of mind during the time period in question is irrelevant.

B. *Exigent Circumstances*

■ The law concerning arrests within the home is clear: the Fourth Amendment of the United States Constitution and article I, section 13 of the California Constitution prohibit warrantless arrests within the home absent exigent circumstances. (*People* v. *Marquez* (1992) 1 Cal.4th 553, 566 [3 Cal.Rptr.2d 710, 822 P.2d 418], citing *People* v. *Ramey* (1976) 16 Cal.3d 263 [127 Cal.Rptr. 629, 545 P.2d 1333] and *Payton* v. *New York* (1980) 445 U.S. 573 [63 L.Ed.2d 639, 100 S.Ct. 1371].) As pertinent here, " '[e]xigent circumstances' justifying a warrantless, in-home arrest for felony refer to an emergency situation requiring swift action . . . to forestall the imminent . . . destruction of evidence. [Citations.] 'There is no ready litmus test for determining whether such circumstances exist, and in each case the claim of an extraordinary situation must be measured by the facts known to the officers.' [Citation.]" (*People* v. *Wilkins* (1993) 14 Cal.App.4th 761, 771 [17 Cal.Rptr.2d 743]; see also *People* v. *Ortiz, supra,* 32 Cal.App.4th at pp. 291-292.)

■ The defendant claims we must determine the officer's entry was both objectively and subjectively reasonable before we can uphold it. Testing the entry for subjective reasonableness, however, is an obsolete California approach superseded by the passage of Proposition 8. (Cal. Const., art. I, § 28, subd. (d); *In re Lance W.* (1985) 37 Cal.3d 873, 879 [210 Cal.Rptr. 631, 694 P.2d 744].) When a defendant moves to suppress evidence citing a violation of the Fourth Amendment, the federal standard for exclusion must be applied. There is no independent California standard. (*In re Lance W., supra,* at p. 879.) The federal standard finds a violation of the Fourth Amendment and requires exclusion of the evidence only if the search and seizure were objectively unreasonable. (*Scott* v. *United States, supra,* 436 U.S. at pp. 135-136 [56 L.Ed.2d at pp. 176-177]; *Maryland* v. *Macon, supra,* 472 U.S. at pp. 470-471 [86 L.Ed.2d at pp. 377-378]; and see *Arizona* v. *Evans, supra,* 514 U.S. __ [131 L.Ed.2d 34].)

In an exigent circumstances case applying pre-Proposition 8 law, the Court of Appeal regarded as relevant the following question: "[W]as this officer . . . motivated primarily by a desire to save lives and property?" (*People* v. *Dickson* (1983) 144 Cal.App.3d 1046, 1063 [192 Cal.Rptr. 897]; see also *People* v. *Duncan* (1986) 42 Cal.3d 91, 104 [227 Cal.Rptr. 654, 720

P.2d 2]; *People* v. *Smith* (1983) 34 Cal.3d 251, 262 [193 Cal.Rptr. 692, 667 P.2d 149] [requiring application of pre-Proposition 8 law when crime occurred before passage of Proposition 8].) An officer's motivation, however, is no longer a part of determining whether there is an unreasonable search or seizure in violation of the Fourth Amendment, although it may become relevant, under the second part of the exclusionary rule test, to whether evidence obtained by an *unreasonable* search or seizure should be excluded. (See, e.g., *United States* v. *Leon* (1984) 468 U.S. 897 [82 L.Ed.2d 677, 104 S.Ct. 3405].) In other words, an officer's proper motivation may save evidence from the exclusionary rule even though the evidence was obtained in violation of the Fourth Amendment, but an officer's improper motivation cannot require exclusion if the evidence was not obtained in violation of the Fourth Amendment. We therefore must determine first whether the entry into the home, viewed objectively, was justified by exigent circumstances.

In *People* v. *Ortiz, supra,* 32 Cal.App.4th at page 289, a police officer saw the defendant and a woman in a hotel room, which is treated the same as a home for Fourth Amendment purposes, counting tinfoil bindles. The police officer was in the hallway and observed the room's occupants through an open door. He immediately entered the room, seized the contraband, and arrested the defendant and the woman. (*Ibid.*) The trial court denied the defendant's motion to suppress the contraband, and the defendant appealed after conviction. We held exigent circumstances justified the warrantless entry into the hotel room. "[V]iewed objectively, the facts known to the officer[] and the inferences drawn therefrom were sufficient to lead a reasonable officer to conclude that there was an imminent danger the contraband would be destroyed if he did not act immediately to arrest defendant and seize the evidence." (*Ibid.*)

█ The circumstances are similar here. An occupant of the residence appeared to see Officer Herring outside and moved toward the front of the house. While the speakers, the main evidence indicating the defendant's guilt, were not as readily disposable as drugs might be, the occupants of the house, knowing police action was imminent, could have disassembled or destroyed the speakers during the time it would have taken to obtain a warrant to search the residence. They also could have hidden the speakers.

Most importantly, fluorescent powder invisible to the unaided eye coated the speakers. This powder tagged each person who touched the speakers. Officer Herring saw one of the speakers on the coffee table. He also saw the defendant enter the living room and sit down on the couch near the coffee table. If the defendant were to reach out and touch the speaker, he could claim he had nothing to do with the vehicle burglary, even though green

powder fluoresced on his hands. He could claim he touched the speaker only after Officer Herring arrived. Furthermore, the defendant and others could have used the time it took the officers to obtain a warrant to wash the powder off their hands and clothing. By immediately entering the residence and arresting the defendant, Officer Herring preserved the state of the ephemeral evidence.

Without immediate action, the state of the evidence could have been lost and, perhaps, the speakers themselves. This imminent danger of losing vital evidence made immediate entry into the residence reasonable. (*People* v. *Ortiz, supra*, 32 Cal.App.4th at pp. 291-292.)

Even though the speaker sat in Officer Herring's plain view, and a crime was thus being committed in his presence, this alone did not justify a warrantless entry into the residence. (*People* v. *Ortiz, supra*, 32 Cal.App.4th at pp. 291-292, fn. 2.) Yet, the circumstances, viewed objectively, presented the exigency of preserving the state of the evidence.

At the preliminary hearing, no one asked Officer Herring what constitutional theory he relied on when he entered the residence. But, given the objective reasonableness of the entry based on the exigent circumstances, his reliance on any legal theory is irrelevant. An officer's blunder in constitutional theory will not free the criminal if, viewed objectively, the search or seizure did not violate the Fourth Amendment. (See *People* v. *Defore* (1926) 242 N.Y. 13, 21 [150 N.E. 585] (opn. of Cardozo, J.); Fleming, The Price of Perfect Justice (1974) pp. 121-128.) Since the search and seizure here were justified by exigent circumstances, they were reasonable and did not violate the Fourth Amendment.

### DISPOSITION

The judgment is affirmed.

Scotland, Acting P. J., and Raye, J., concurred.

A petition for a rehearing was denied June 14, 1995, and appellant's petition for review by the Supreme Court was denied August 10, 1995.