[No. A116578. First Dist., Div. Five. Jan. 11, 2008.]

THE PEOPLE, Plaintiff and Respondent, v.
JOHN HUA, Defendant and Appellant.

COUNSEL

Gordon S. Brownell, under appointment by the Court of Appeal, for Defendant and Appellant.

Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Gerald A. Engler, Assistant Attorney General, Martin S. Kaye and Ronald E. Niver, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**SIMONS, J.**—Two Pacifica police officers observed several individuals smoking marijuana in an apartment rented by appellant John Hua. The officers entered, without either a warrant or consent, and eventually discovered growing marijuana plants and a cane sword. Appellant was originally charged with cultivation of marijuana (Health & Saf. Code, § 11358) (count 1), possession for sale of marijuana (Health & Saf. Code, § 11359) (count 2), and felony possession of a cane sword (Pen. Code, § 12020, subd. (a)) (count 3).

In the trial court, appellant challenged the police entry and the subsequent search of his apartment in a motion to suppress the evidence seized by the police. (Pen. Code, § 1538.5.) The trial court denied the motion, concluding the entry was justified by exigent circumstances. Appellant then entered a plea of nolo contendere to cultivation of marijuana (Health & Saf. Code, § 11358) and misdemeanor possession of a cane sword (Pen. Code, § 12020, subd. (a)). On appeal, appellant challenges the denial of his motion to suppress (Pen. Code, § 1538.5, subd. (m)). We reject the People's contention that exigent circumstances justified the warrantless entry of appellant's home. Under *Welsh v. Wisconsin* (1984) 466 U.S. 740, 753–754 [80 L.Ed.2d 732, 104 S.Ct. 2091] (*Welsh*), a finding of exigent circumstances is categorically precluded when the only crime the police are aware of when they enter a residence to arrest the occupant and/or seize contraband is possession of no more than 28.5 grams of marijuana.

### BACKGROUND[1]

At 11:08 p.m. on March 27, 2005, uniformed Pacifica Police Officer Patrick Mostasisia (Mostasisia) and Pacifica Police Corporal Darci Mix (Mix) received a dispatch report regarding a "noise disturbance" at an apartment building on Talbot Avenue in apartment No. 308 (the apartment). As the officers approached the apartment, they noticed the "distinct odor" of burnt marijuana coming from it. Mostasisia knocked on the apartment door and awaited a response.

From her vantage point, standing in a common area in front of the window next to the front door of the apartment, Mix looked through the open vertical blinds and saw several people socializing in the living room area. Mix saw

---

[1] The background facts are derived from the preliminary hearing transcript.

one person put an object to his lips and smoke from it. Based on her training and experience, Mix testified this conduct was consistent with someone smoking marijuana.

After Mostasisia knocked repeatedly for about 45 seconds, appellant, who resided in the apartment, answered the door. Mostasisia and Mix stood right outside the front door on a walkway common to all apartments on that floor. When Mostasisia advised appellant that they were responding to a noise disturbance call, appellant said he had been using a drill earlier that evening. When Mostasisia asked appellant about the marijuana odor, appellant denied *he* was smoking marijuana, implying there might be others who were smoking marijuana in the apartment. When Mix told appellant she saw someone smoking what appeared to be marijuana, appellant denied it. Because of the amount of smoke evident inside the apartment, the officers told appellant they were concerned about the destruction of evidence and asked for consent to enter. Appellant did not want the officers to enter. Appellant responded "no" when Mix asked if he had a medical marijuana card. When the officers again asked appellant for his permission to enter, he stepped aside and allowed them in. On cross-examination, Mostasisia conceded that he made it clear to appellant that the officers wanted to enter the apartment and that in his report he stated, "[Appellant] succumbed to our request and stepped aside."

As the officers entered the apartment, Mostasisia first noticed the smell of marijuana and a cloud of smoke in the living room. Aside from appellant, five other persons were inside the living room area. Mostasisia observed two "blunts," or "smoked-out" marijuana cigarettes on the living room coffee table. For safety purposes, Mostasisia asked if any other persons were inside the apartment and a couple of people said "no." When Mix asked if anyone had a medical marijuana card, several persons said they did not. No one claimed ownership of the blunts.

Mostasisia asked if there were any weapons or animals[2] in the apartment and someone said "no." Thereafter, all of the persons in the living room consented to a search of their persons, and the search turned up no contraband. Mix then performed a 30- to 45-second protective sweep of the apartment for officer safety, to ensure no animals or other individuals were

---

[2] Mostasisia said his question regarding animals mainly concerned the possible presence of "guard dogs, pit bulls, Rottweilers."

present. Mix testified that conducting such a protective sweep was "standard practice for [her]." During the protective sweep 46 marijuana plants growing in plastic dirt-filled tubs were found in plain view inside appellant's bedroom.[3] No drawers or closets were opened during the protective sweep.

Appellant was detained and handcuffed, but advised he was not under arrest. He said there was a letter which allowed him to cultivate or possess marijuana. Mostasisia believed that appellant was giving the officers permission to find the letter, so Mix retrieved it from an open safe. A very large quantity of empty plastic baggies was also found in or around the safe. The letter did not give appellant permission to possess or grow marijuana, but instead named someone not present at the apartment. Aside from the plants, the police observed, in plain view, a bag of potting soil in the hallway, three bottles of liquid plant food in the living room, and a small digital scale. Inside the bathroom, a "Cannabis Grow Bible" and plastic planter trays were found. A cane sword was found on the top bookshelf in the living room. Each of these items was seized. Sometime after Mix conducted her protective sweep of the apartment, other officers arrived and took control of the scene.

Thereafter, appellant was given *Miranda* admonitions (*Miranda v. Arizona* (1966) 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602]) and agreed to be interviewed at the police station. Appellant said he grew marijuana as a hobby to use it as wallpaper. However, there were no marijuana leaves or plants embedded in the walls of the apartment. Appellant also said he did smoke marijuana with his friends but denied selling it. Appellant was not arrested on the evening the officers entered his apartment.

In moving to suppress, appellant argued that the officers' warrantless entry and search of his entire apartment was nonconsensual and unjustified by exigent circumstances. The People opposed the suppression motion on the grounds that the plain view exception to the warrant requirement justified the officers' actions, the officers' warrantless entry was justified by their concern regarding the imminent destruction of drug evidence and the officers' concern for their safety justified the protective sweep of the apartment. The magistrate denied appellant's motion to suppress all evidence seized after finding persuasive the prosecution's argument and authorities.

Thereafter, appellant renewed the motion to suppress in the trial court on the ground that there were no exigent circumstances justifying the officers'

---

[3] Expert testimony was later presented that the marijuana found in appellant's apartment was being cultivated and was possessed for both personal use and sale.

warrantless search of his apartment. (Pen. Code, § 1538.5, subd. (i).) The People opposed the motion, arguing that the officers had probable cause to believe that an offense was being committed inside the apartment and entered out of concern that evidence would be destroyed. The court denied the renewed suppression motion after concluding there were exigent circumstances.

DISCUSSION

I. *Standard of Review*

Where, as here, a motion to suppress is submitted to the superior court on the preliminary hearing transcript, "the appellate court disregards the findings of the superior court and reviews the determination of the magistrate who ruled on the motion to suppress, drawing all presumptions in favor of the factual determinations of the magistrate, upholding the magistrate's express or implied findings if they are supported by substantial evidence, and measuring the facts as found by the trier against the constitutional standard of reasonableness." (*People v. Thompson* (1990) 221 Cal.App.3d 923, 940 [270 Cal.Rptr. 863].) "We exercise our independent judgment in determining whether, on the facts presented, the search or seizure was reasonable under the Fourth Amendment. [Citation.]" (*People v. Lenart* (2004) 32 Cal.4th 1107, 1119 [12 Cal.Rptr.3d 592, 88 P.3d 498].) We affirm the trial court's ruling if correct under any legal theory. (*People v. Zapien* (1993) 4 Cal.4th 929, 976 [17 Cal.Rptr.2d 122, 846 P.2d 704].)

II. *The Officers' Warrantless Entry Was Not Justified by Exigent Circumstances*

██ "It is axiomatic that the 'physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed.' [Citation.] And a principal protection against unnecessary intrusions into private dwellings is the warrant requirement imposed by the Fourth Amendment on agents of the government who seek to enter the home for purposes of search or arrest. [Citation.] It is not surprising, therefore, that the [United States Supreme] Court has recognized, as 'a "basic principle of Fourth Amendment law[,]" that searches and seizures inside a home without a warrant are presumptively unreasonable.' [Citations.]" (*Welsh, supra,* 466 U.S. at pp. 748–749, fn. omitted.)

"Yet, as with so much of its Fourth Amendment jurisprudence, the high court has stopped short of erecting a categorical bar. The presumption of unreasonableness that attaches to a warrantless entry into the home 'can be overcome by a showing of one of the few "specifically established and well-delineated exceptions" to the warrant requirement [citation], such as " 'hot pursuit of a fleeing felon, or imminent destruction of evidence, . . . or the need to prevent a suspect's escape, or the risk of danger to the police or to other persons inside or outside the dwelling' " [citation]. The United States Supreme Court has indicated that entry into a home based on exigent circumstances requires *probable cause* to believe that the entry is justified by one of these factors such as the imminent destruction of evidence or the need to prevent a suspect's escape.' [Citation.]" (*People v. Thompson* (2006) 38 Cal.4th 811, 817–818 [43 Cal.Rptr.3d 750, 135 P.3d 3] (*Thompson*).)

"An exigent circumstance is needed for a warrantless entry into one's home regardless of the strength of the probable cause to arrest [citation] or the existence of a statute authorizing the arrest. [Citations.]" (*People v. Ortiz* (1995) 32 Cal.App.4th 286, 291 [38 Cal.Rptr.2d 59].)

For good reason, appellant does not contest the existence of probable cause to believe a crime was being committed by those inside the apartment. Responding to a noise complaint, the police detected the odor of burning marijuana and observed what appeared to be one or more individuals smoking marijuana. These observations were confirmed by appellant's equivocal answer to an officer's question regarding the marijuana odor.

█ Appellant focuses his challenge to the warrantless entry on *Welsh*'s requirement that an entry into a home to preserve evidence from imminent destruction is limited to evidence of crimes that are not minor. (*Welsh, supra*, 466 U.S. at p. 750.) Appellant argues the entry was illegal because the offense known to the officers at the time of entry, the simple possession of marijuana (Health & Saf. Code, § 11357, subd. (b)),[4] is a nonjailable offense and, therefore, cannot justify an entry to prevent the imminent destruction of evidence. In *Welsh*, officers went to the defendant's home after developing probable cause to believe he had recently driven a car under the influence of alcohol. The officers entered the home without a warrant to arrest the

---

[4] Pursuant to Health and Safety Code section 11357, subdivision (b), a person who possesses not more than 28.5 grams of marijuana, other than concentrated cannabis, is guilty of a misdemeanor, punishable by a fine of not more than $100. Pursuant to subdivision (c) of that section, possession of more than 28.5 grams of marijuana, other than concentrated cannabis, is punishable by not more than six months in jail or a fine up to $500, or both.

defendant, in part, because they feared the imminent destruction of evidence that would result from the dissipation of the alcohol in his blood. (*Welsh*, at pp. 753–754.) *Welsh* reasoned that "an important factor to be considered when determining whether any exigency exists [to justify a warrantless entry] is the gravity of the underlying offense for which the arrest is being made." (*Id.* at p. 753.) Welsh was arrested for his first driving under the influence (DUI) offense, and, in Wisconsin, such offenses were classified as noncriminal, civil forfeiture offenses for which no imprisonment could be imposed. On that basis, the Supreme Court determined the warrantless entry was unreasonable. (*Id.* at p. 754.)

*Illinois v. McArthur* (2001) 531 U.S. 326 [148 L.Ed.2d 838, 121 S.Ct. 946] (*McArthur*) delineated the scope of exigency in circumstances closely related to our own. In *McArthur*, the police suspected that marijuana had been hidden in a trailer where McArthur was living. The police contacted McArthur outside the trailer and sought permission to search the trailer, which McArthur denied. While one officer went to get a search warrant, McArthur was barred from reentering the trailer without a police officer accompanying him. About two hours later, an officer returned with the warrant and found a small amount of marijuana in the trailer. (*Id.* at p. 329.) McArthur relied on *Welsh* to argue that misdemeanor possession of marijuana, punishable in Illinois by up to 30 days in jail, was too minor an offense to justify the warrantless restraint he had suffered. (*McArthur*, at pp. 335–336.) The high court disagreed, concluding that " ' "the penalty that may attach to any particular offense seems to provide the clearest and most consistent indication of the State's interest in arresting individuals suspected of committing that offense" ' [citation] and finding 'significant distinctions' between 'crimes that were "jailable," not "nonjailable." ' [Citations.]" (*Thompson, supra*, 38 Cal.4th at p. 822.)

Finally, in *Thompson*, our Supreme Court distinguished *Welsh* and relied on *McArthur* to uphold a warrantless entry into a home to effect a suspect's arrest for DUI because, unlike Wisconsin, California classifies a first DUI offense as a criminal act, punishable by a jail term. (*Thompson, supra*, 38 Cal.4th at p. 821.) *Thompson* also reasoned that, in California, DUI "is not an 'extremely minor' offense" and limited *Welsh* to Wisconsin's decision to classify DUI as a civil nonjailable offense. (*Thompson*, at p. 821.)

Possession of less than 28.5 grams of marijuana is a misdemeanor punishable by a fine of no more than $100, which is less than the punishment

imposed by Wisconsin in *Welsh*. Relying on the line clearly drawn between jailable and nonjailable offenses in *McArthur* and *Thompson*, we conclude that the crime observed by the Pacifica police officers cannot support a warrantless entry, based on exigent circumstances.

This conclusion is confirmed by certain policy factors considered during the enactment of Senate Bill No. 95 (1975–1976 Reg. Sess.), which amended Health and Safety Code section 11357, subdivision (b), to reduce the penalties for simple possession of marijuana. For example, in its analysis, the State Office of Narcotics and Drug Abuse recited as reasons for the amendment: (1) "[U]se of a substance with a comparatively low health and social hazard such as marijuana does not warrant jail or imprisonment"; and (2) "The [personnel] and dollar costs of enforcing present marijuana laws could be better spent for other, more beneficial social purpose." (State Off. of Narcotics and Drug Abuse, Enrolled Bill Rep. on Sen. Bill No. 95 (1975–1976 Reg. Sess.) July 1, 1975, p. 3.)

The minor nature of this crime is also revealed in its treatment of repeat offenders. If a person who possesses less than 28.5 grams of marijuana "has been previously convicted three or more times of an offense described in this subdivision during the two-year period immediately preceding the date of commission of the violation to be charged" the person must be placed in a drug diversion program pursuant to Penal Code sections 1000.1 and 1000.2. (Health & Saf. Code, § 11357, subd. (b).) And, if not accepted into a diversion program, the person shall be subject to the $100 fine. (*Ibid.*) In addition, a person arrested for a violation of this subdivision is to be cited and released "and shall not be subject to booking." (*Ibid.*) This mandatory citation-only procedure appears to be unique among misdemeanor offenses. Finally, the preservation of the records of arrest and conviction for this offense is limited. Health and Safety Code section 11361.5, subdivision (a), expressly provides that records "pertaining to the arrest or conviction of any person for a violation of subdivision (b), (c), (d), or (e) of Section 11357 . . . shall not be kept beyond two years from the date of the conviction . . . ."

The People do not challenge this legal analysis. Instead, they argue that at the time of entry, the two officers had probable cause to believe that two crimes more serious than a violation of Health and Safety Code section 11357, subdivision (b), were being committed. "[T]he officers had reason to believe that appellant possessed [more than 28.5 grams of marijuana], which exposed him to a possible sentence of a year in jail. (Health & Safe Code, § 11357, subd. (a).)" While we accept the reasonable possibility that there was more marijuana in the apartment than the two blunts observed by the officers, it is mere conjecture to conclude that there was enough to constitute a jailable offense.

■ The People also argue, "the act of furnishing marijuana to others is a felony punishable by imprisonment for as many as four years. (Health & Saf. Code, § 11360, subd. (a).)" But this argument ignores Health and Safety Code section 11360, subdivision (b), which provides that "Except as authorized by law, every person who gives away . . . not more than 28.5 grams of marijuana . . . is guilty of a misdemeanor and shall be punished by a fine of not more than" $100.[5] Thus, even had the officers observed one individual in the apartment furnish another with marijuana, the officers did not have probable cause to believe that a jailable offense was being committed at the time they entered.

■ We recognize that in *Welsh* and *Thompson* the officers entered a residence to obtain evidence of a crime that had occurred in the past, outside of the officers' presence. Here, the Pacifica police officers observed the commission of a crime that was ongoing at the time they entered the apartment. At least one court has concluded that Penal Code section 836 authorizes a warrantless entry to effect an arrest in such circumstances. (*People v. Robinson* (1986) 185 Cal.App.3d 528, 531 [229 Cal.Rptr. 851].) Section 836, subdivision (a), provides that a peace officer may arrest a person without a warrant whenever "(1) The officer has probable cause to believe that the person to be arrested has committed a public offense in the officer's presence." We join several other courts in expressly rejecting the *Robinson* analysis. "A statute does not trump the Constitution. Under the Fourth Amendment, ' "To be arrested in the home . . . is simply too substantial an invasion to allow without a warrant, at least in the absence of exigent circumstances, even when it is accomplished under statutory authority . . . ." ' [Citation.]" (*People v. Ortiz, supra,* 32 Cal.App.4th at p. 292, fn. 2.) *Conway v. Pasadena Humane Society* (1996) 45 Cal.App.4th 163, 176 [52 Cal.Rptr.2d 777], and *People v. Hull* (1995) 34 Cal.App.4th 1448, 1453 [41 Cal.Rptr.2d 99], have adopted the reasoning of *Ortiz,* as do we.

■ California has chosen to treat the offense of possession of less than 28.5 grams of marijuana as a minor offense that is nonjailable even for repeat offenders. Under *Welsh, McArthur* and *Thompson,* one consequence of that decision is to preclude officers who see this offense being committed from entering a home without a warrant or consent to seize the offender or the contraband, in order to prevent the imminent destruction of evidence of the offense.

Because the Pacifica police officers' entry into the apartment was unjustified, appellant's motion to suppress the evidence seized was erroneously denied.

---

[5] This provision also contains a mandatory citation requirement, like the one contained in Health and Safety Code section 11357, subdivision (b).

## DISPOSITION

The judgment is reversed.

Jones, P. J., and Gemello, J., concurred.

Respondent's petition for review by the Supreme Court was denied April 16, 2008, S160856. George, C. J., did not participate therein.